

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-27-2007

# Kline v. Mansfield

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4583

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Kline v. Mansfield" (2007). *2007 Decisions*. Paper 189.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/189

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4583

HEATHER A. KLINE, By and through her parent and
natural guardian, Stepahnie J. Arndt*,

Appellant

v.

TROY PAUL MANSFIELD; HAMBURG AREA SCHOOL
DISTRICT; JOSEPH PADASAK

(*Amended 12/1/06)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-04006)
Magistrate Judge: Hon. Arnold C. Rapoport

Argued October 23, 2007

BEFORE: FISHER, STAPLETON and COWEN, Circuit Judges

(Filed: November 27, 2007 )

John J. Speicher, Esq. (Argued)
Leisawitz, Heller, Abramowitch
  & Phillips
2755 Century Boulevard
Wyomissing, PA 19610

Counsel for Appellant

Anne E. Hendricks, Esq. (Argued)
Paul N. Lalley, Esq.
Stacy G. Smith, Esq.
Levin Legal Group
1800 Byberry Road
1301 Masons Mill Business Park
Huntingdon Valley, PA 19006

Counsel for Appellees Hamburg Area School District
  and Joseph Padasak

OPINION

COWEN, Circuit Judge.

Heather Kline appeals from the denial of her motion for leave to amend the complaint as well as the grant of summary judgment in favor of the Defendants, Hamburg Area School District ("Hamburg") and Joseph Padasak. For the following reasons, we will affirm.

I.

In 1997, Kline met Troy Mansfield as a student in his third-grade class. After Kline finished the third grade, her contact with Mansfield continued. In 2001, when Kline was in the seventh grade, Mansfield was transferred to the Hamburg Area Middle School to teach sixth grade.

During the 2001-2002 academic year, Kline began to frequently visit Mansfield in his sixth grade classroom. These visits occurred before, during and after school. At one

point in March 2002, Kline was caught in Mansfield's classroom cutting band rehearsal. After this incident, Kline's seventh grade teachers met and issued a statement that

 "Heather Kline is not allowed to go to Mr. Mansfield's room for any reason."  (App. 782a).

The relationship between Kline and Mansfield became intimate and eventually sexual during the 2001-2002 academic year.  Kline admits that neither she, nor her mother, Stephanie J. Arndt, complained to school officials about Kline's contact with Mansfield.  Furthermore, no official of Hamburg possessed actual knowledge of the intimate or sexual nature of the relationship.

Ultimately, Mansfield was charged with various sexual offenses arising from his conduct.  In 2004, he pled guilty, and was sentenced to eleven-and-one-half years to thirty-one years imprisonment.

## II.

In July 2003, Kline filed a complaint against Mansfield, Hamburg and Padasak (principal of Hamburg Area Middle School).  She alleged sexual harassment against all of the Defendants in violation of Title IX; violations of 42 U.S.C. § 1983[1]

---

[1] Kline specifically asserted that her rights to equal protection and privacy were violated.

against all of the Defendants; intentional infliction of emotional distress against Mansfield; respondeat superior liability against Hamburg; and sexual assault and battery against Mansfield.

During discovery, Kline moved to amend the complaint. The proposed amended complaint asserted similar federal claims against all of the Defendants; sexual assault and battery against Mansfield; and negligence against Mansfield. Within her federal claims, Kline sought to add specific substantive due process language. In September 2004, the District Court denied the motion to amend without prejudice. The District Court stated that Kline could refile a motion for leave to amend the complaint.

In December 2004, Kline filed a second motion for leave to file an amended complaint. Most important for purposes of this appeal, Kline again sought to include specific language of her substantive due process rights. In September 2005, the District Court denied the motion for leave to amend the complaint, observing that "portions of the new averments [were] futile" while "other portions seem to simply state more specifically the nature of plaintiff's Section 1983 claims." (App. 32a.) After noting that the "new averments as to special relationship [between Kline and the school were] futile" in light of our decision in D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir. 1992)(en banc), the District Court went on to conclude as follows:

> The general averment contained in the Section 1983 Count of the initial complaint reads: "[a]ll Defendants had a duty to provide and ensure an educational environment for the minor, Heather, free of sexual innuendo, intimidation and harassment

and to enforce the regulations, rules and laws necessary to protect the minor, Heather, from the acts of sexual abuse. (Complaint, paragraph 38 at page 7.)"

Defendants did not object to the language, nor in fact raise any objections to Plaintiff's complaint, instead choosing to file an answer to it. In the proposed amended complaint, plaintiff includes this same paragraph but includes a few additional paragraphs averring that the responding defendants failed to have policies and training to protect minors from abuse. Defendants argue that they were not prepared for claims of failure to train and inadequate policy, and they have not conducted discovery into these issues. Defendants argue that inclusion of these claims in the proposed amended complaint mark a change in legal theories.

From our review of the initial complaint, several paragraphs within the initial complaint do either refer to or imply such claims. Paragraph 16 of the initial complaint references the school district's "rules, polices and regulations" and that other teachers made Mr. Padasak aware that Mr. Mansfield's conduct was violating those policies. Paragraph 20 of the initial complaint avers that Mr. Padasak had the authority to train his employees, including defendant. Paragraph 25 of the initial complaint avers that the District knew or should have known of the inappropriate relationship and that neither took any steps to address it.

These averments are sufficient to put the responding defendants on notice that their policies and practices could form part of plaintiff's cause of action. Accordingly, denial of plaintiff's motion does not automatically preclude any evidence on the inadequacy of training or policies, because these claims are either explicit or can be inferred from the initial complaint to which there was no objection.

(App. 32a-33a.)

Hamburg and Padasak eventually moved for summary judgment. The District

5

Court granted the motion in September 2006.[2]  See Kline ex rel. Arndt v. Mansfield, 454

F. Supp. 2d 258 (E.D. Pa. 2006).  While the District Court read the prior opinion denying

the motion for leave to file an amended complaint as precluding any constitutional claims

other than Kline's equal protection and right to privacy claims, it nevertheless did address

and grant summary judgment in favor of the Appellees on Kline's theory of a municipal

policy or practice of deliberate indifference to the risk of sexual abuse and an alleged

failure to train.  Kline appealed this judgment as well as the District Court's order

denying her motion for leave to file an amended complaint.

### III.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We review the

denial of a motion to amend a complaint for abuse of discretion.  See Lake v. Arnold, 232

F.3d 360, 373 (3d Cir. 2000)(citation omitted).  We exercise plenary review over a

District Court's order granting summary judgment.  See Lexington Ins. Co. v. W. Pa.

Hosp., 423 F.3d 318, 322 n.2 (3d Cir. 2005).

### IV.

#### A.  Motion for Leave to File an Amended Complaint

Kline argues that the District Court abused its discretion in denying the motion for

leave to file an amended complaint.  If the District Court had denied Kline the

---

[2] The District Court also granted summary judgment in favor of Mansfield on the federal claims and declined supplemental jurisdiction over the remaining state law claims. Kline does not appeal these decisions.

opportunity to proceed on the "policy or practices" and "failure to train" claims she sought to pursue, we would agree that the District Court abused its discretion. The proposed amended complaint, in that regard, was not futile, and, as the District Court ruled, would not have prejudiced the Appellees. As we read the District Court's order denying the motion for leave to amend the complaint, however, it properly concluded that both of those claims were at least implicitly included in the original complaint. It allowed those claims to go forward.

In any event, Kline has no cause to complain about the process in the District Court. The only two claims that she wishes to litigate on appeal were considered by the District Court when the Appellees moved for summary judgment and were resolved on the merits. The fact that the District Court did not expressly recognize them as "substantive due process" claims is immaterial. Given that we have a final judgment on those claims, we can now proceed to address them on the merits.[3]

## B. Kline's Substantive Due Process Claims[4]

Kline raised two substantive due process claims. First, she asserted that Hamburg had a policy or custom of deliberate indifference towards her sexual abuse. Second,

---

[3] Because we find that the District Court analyzed Kline's substantive due process claims on the merits, we need not reach Kline's argument that the District Court violated the law of the case doctrine.

[4] The District Court also granted summary judgment in favor of the Defendants on Kline's equal protection and right to privacy claims. Kline does not appeal the decisions regarding those claims.

7

Kline asserted that Hamburg failed to properly train its employees to recognize and report signs of sexual abuse. The District Court granted summary judgment in favor of Hamburg on both of these claims. We consider each of these claims in turn.

### i. Policy/Custom of Inaction

Kline argues that the District Court erred in granting summary judgment because there were material issues of fact regarding whether Hamburg had a custom or policy of deliberate indifference that violated her constitutional right to be free from sexual abuse. In Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978), the Supreme Court stated that a municipality can be liable under Section 1983 if its policy or custom causes a constitutional injury. With respect to a sexual abuse claim:

> [i]n order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the sexual abuse and that the defendant acted with deliberate indifference to that abuse. In order to establish deliberate indifference on the part of the defendant, "something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm" to plaintiffs.

Black by Black v. Indiana Area Sch. Dist., 985 F.2d 707, 712-13 (3d Cir. 1993)(quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1025 (3d Cir. 1991)).

Kline conceded that neither she, nor her mother, complained to any school official about Mansfield's conduct. Instead, Kline based her claim on the knowledge that school officials possessed regarding the contacts between her and Mansfield. For example, Kline noted that she was suspended from school after she skipped band rehearsal to be

8

with Mansfield in his classroom. She also noted that teachers complained that she was spending too much time with Mansfield in his classroom. Furthermore, she stated that her seventh grade teachers stated at one point that she was not to be in Mansfield's room for any reason. Finally, Kline stated that the school failed to enforce its policy of not allowing seventh grade students in the sixth grade hallway.

Kline's evidence does not create a material issue of fact that Hamburg was deliberately indifferent. At best, it shows that Hamburg might have been negligent in failing to recognize a high risk of harm.[5] However, this does not establish a material issue of fact with respect to this claim. See id., cf., Shepard v. Kemp, 912 F. Supp. 120,

---

[5] On appeal, Kline compares her case to Stoneking v. Bradford Area School District, 882 F.2d 720 (3d Cir. 1989), Craig v. Lima City Schools Board of Education, 384 F. Supp. 2d 1136 (N.D. Ohio 2005) and C.M. v. Southeast Delco School District, 828 F. Supp. 1179 (E.D. Pa. 1993). These cases are all distinguishable. In Stoneking, the record revealed complaints about sexual assaults of female students by teachers and staff. The vice-principal recorded these allegations in a secret file at home rather than in the teachers' personnel file. See Stoneking, 882 F.2d at 728-29. Additionally, the defendants continued to give the teachers excellent performance evaluations and discouraged and/or intimidated parents from pursuing their complaints. See id. Unlike Stoneking, the record in this case did not show that the school officials had notice of any sexual misconduct. Craig and C.M. are also similarly distinguishable. In Craig, teachers saw the plaintiff go into her teacher's classroom with the lights out, the door closed and the shades drawn. Teachers also saw the plaintiff and her sexual abuser go to his van alone and leave school property together on a daily basis. The two would sit together on bus trips and cuddle underneath a blanket and fall asleep against one another. Furthermore, once the superintendent found out about the relationship between the teacher and the plaintiff, he wrote a memo and entitled it, "consensual sex." See Craig, 384 F. Supp. 2d at 1148. In C.M., the District Court noted that there was a student complaint about a teacher and that staff members complained to school officials that the teacher was a "depraved and dangerous" man. These complaints also disclosed the sexual overtones of the teacher's behavior. See 828 F. Supp. at 1185.

127-28 (M.D. Pa. 1995)(noting that officials were aware of reports that children were spending inordinate amount of time with teacher, but that there was no disclosure of any wrongdoing).  Therefore, the District Court properly granted summary judgment in favor of the Defendants on this claim.[6]

## ii.  Failure to Train

Next, Kline asserts that Hamburg failed to properly train its employees to spot and report signs of sexual abuse.  "[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983."  Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997)(citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  Failure to train can be the basis for Hamburg's liability if the failure to train reflects a deliberate or conscious choice by Hamburg.  See City of Canton, 489 U.S. at 389.  To attach liability to Hamburg, the identified deficiency in the training program must be closely related to the ultimate injury.  See id. at 391.  Proving that an injury could have been avoided if a school official had better or more training is not enough to show municipal liability.  See id.  Otherwise, "[s]uch a claim could be made about almost any

_____

[6] Much of the analysis supporting summary judgment for Hamburg also supports summary judgment for Padasak.  In particular, Padasak knew only that Kline spent time in Mansfield's classroom when she was scheduled to be elsewhere.  There is no record evidence that prior to Mansfield's eventual arrest, Padasak knew or should have known that Mansfield ever sexually abused Kline.  Padasak's actions, therefore, do not amount to deliberate indifference to Kline's constitutional rights.

10

encounter resulting in injury." Id.

"Establishing municipal liability on a failure to train claim under § 1983 is difficult." Reitz, 125 F.3d at 145. "Failure to train . . . municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." See Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)(per curiam)(citing Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 408-09 (1997)). While it is possible to maintain a failure to train claim without showing a pattern, the Supreme Court has stated that the burden on a plaintiff in such a case is high. City of Canton "did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." Bryan County, 520 U.S. at 409. Indeed, the Supreme Court noted [in the context of a failure to train law enforcement case]:

> in a narrow range of circumstances, a violation of federal rights may be a highly predicable consequence of a failure to equip law enforcement officers with specific tools to handle recurrent situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train an officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice - namely, a violation of a specific constitutional or statutory right.

11

Id.[7] Kline raised her failure to train claim under both theories.

First, Kline argues that additional training was necessary given the rampant sexual misconduct that was occurring within the School District. Kline's evidence does not create a material issue of fact that there was a pattern of sexual abuse such that Hamburg was deliberately indifferent in failing to institute additional training to its staff. Upon reviewing the record, Kline's pattern evidence is far too attenuated from her circumstances to show that there was a pattern of sexual abuse that necessitated Hamburg institute training to its employees to spot signs of sexual abuse. Furthermore, Kline's reliance on instances of possible sexual abuse that were unknown to Hamburg is also misplaced. Because this evidence was unknown, the failure to train school officials could not be perceived as a conscious or deliberate choice on Hamburg's part. See City of Canton, 489 U.S. at 389. Finally, Kline relies on the evidence of her expert, Dr. Kent. Dr. Kent stated that additional training might have prevented Kline from being sexual abused by Mansfield. This evidence does not create a material issue of fact with respect to this claim. Indeed, as previously stated, the fact that further training might have prevented constitutional injury, does not, in and of itself establish a failure to train claim. See id. at 392.

Because Kline failed to show that Hamburg's failure to train its officials to spot

---

[7] For example, arming police officers without training them in the constitutional limits of using the arms is an example of deliberate indifference to an obvious risk. See Berg, 219 F.3d at 276 (citing City of Canton, 489 U.S. at 390 n.10).

signs of sexual abuse caused a pattern of sexual abuse, she can only proceed under the narrow theory described in Bryan County. In support of this theory, Kline relies on Walker v. City of New York, 974 F.2d 293 (2d Cr. 1992). Walker is distinguishable. Walker involved a motion to dismiss as opposed to summary judgment. The plaintiff in that case alleged that the police department failed to train and supervise police officers in their obligation not to commit or suborn perjury. See id. at 298. The Second Circuit reversed, not on the narrow theory described in Bryan County, but because the plaintiff should have been allowed to show a pattern of police misconduct. See Walker, 974 F.2d at 299-300. It stated that because not committing perjury was obvious to all without any further training or supervision, the failure to train was generally not so likely to produce a wrong decision supporting an inference of deliberate indifference by the city in the need to train or supervise. See id.

Unlike Walker, Kline was given the opportunity to show a pattern of sexual abuse. For the reasons previously stated, she failed to show such a pattern. Additionally, because not committing the crime of sexually abusing a child is obvious, the failure of Hamburg to train its employees to spot signs of sexual abuse such as Mansfield's "grooming" methods was not deliberately indifferent. See, e.g., id. at 299-300.

Finally, Kline argued that Hamburg failed to train its employees on reporting sexual abuse. However, there is no evidence that any school official knew of the sexual abuse that was occurring between Mansfield and Kline. Therefore, the District Court

13

properly entered summary judgment in favor of the Defendants on Kline's failure to train claim.

V.

In conclusion, the District Court did not err in granting summary judgment in favor of Hamburg and Padasak on Kline's substantive due process claims. We will affirm the District Court's judgment.

14