VAUGHN, Justice,
dissenting:
I believe the Majority misconstrues the Child Victim’s Act (the “Act”) by concluding that Fairwinds is subject to indirect liability through imputation of Sandy Sterling’s (“Sandy”) knowledge,[82] and through vicarious liability based on Sandy’s failure to report Hecksher’s abuse.[83] Under the Majority’s view, a school is subject to potential liability for a teacher’s sexual abuse of a student in a suit brought under the Act if there is testimony that decades ago one teacher, in addition to the abuser, was aware of the abuse and failed to report it. I find it difficult to harmonize such a result with the express language of the Act, which requires that damages against an employer “be awarded ... only if there is a finding of gross negligence on the part of the entity.”[84]
Vicarious liability is an employer’s strict liability for the negligence of an employee.[85] It does not involve a finding of negli *1210 gence on the part of the employer at all.[86] Allowing recovery of damages based on principles of respondeat superior and imputation in cases where a third-party teacher gains knowledge of another teacher’s sexual abuse of a student runs counter to the express language of the Act,[87] as liability would attach even though the entity was not grossly negligent in supervising the teacher’s conduct and had no opportunity to take action to end the abuse. For these reasons, and the other reasons set forth herein, I dissent.
My view of the statute is that because damages can be awarded against an employer only if “there is a finding of gross negligence on the part of the entity,” a plaintiff must prove direct liability.[88] In the case of a school, direct liability would be proof of gross negligence on the part of a principal, vice-principal, or other management or supervisory official.[89] From this, I conclude that what Sandy and Sterling’s sister-in-law knew and did not report is not relevant.
As to the remaining evidence, I agree with the Superior Court' that it is insufficient as a matter of law to sustain a jury finding of gross negligence on the part of Fairwinds.[90] Gross negligence is an “extreme departure from the ordinary standard of care”[91] that “signifies more than ordinary inadvertence or inattention.”[92] “It implies a lack of care involving a conscious indifference to consequences in circumstances where probability of harm to another is reasonably apparent,”[93] an “ ‘I-don’t-care-a-bit-what happens’ attitude.”[94] The Majority concludes that a reasonable jury could determine that Fairwinds’ inac *1211 tion satisfies this high standard. I disagree.
Hecksher argues that Fairwinds was grossly negligent in failing to implement an abuse and prevention policy and failing to provide training to its staff on recognizing and reporting sexual abuse, as well as by ignoring several “red flags,” which included: (1) two formal complaints — one made by a female student and the other by the parents of a female student — alleging Sterling had acted inappropriately; (2) Sterling’s tapping Hecksher on the butt in the presence of the school’s faculty; (3) evidence that Sterling took Hecksher as his “date” to a school event;[95] and (4) evidence that Sterling had a reputation of being a “creep.”
First, I do not believe Fairwinds’ failure to implement a sexual abuse prevention policy equates to an “I-don’t-care-a-bit-what happens’ attitude.”[96] While it is true that the staff of Fairwinds had a statutory duty to report sexual abuse,[97] it does not follow that Fairwinds should be found grossly negligent merely because one staff member breached that duty without the administration’s knowledge.[98] To hold otherwise undermines the particularly demanding matter of proof set forth by the Legislature in the Child’s Victim Act.[99] Moreover, Fairwinds had no statutory duty to implement a policy, and the record reveals no obstacle that prevented Sandy, Sterling’s sister-in-law, or any other member of the staff, from informing Fairwinds’ administration of inappropriate behavior on the part of Sterling.
For similar reasons, I do not believe that Hecksher’s evidence creates a genuine issue of fact as to whether Fairwinds was grossly negligent in failing to provide training to its staff on how to recognize and report signs of sexual abuse. It is undisputed that Fairwinds was unaware of Sterling’s abuse of Hecksher, and the majority of “red flags” relied upon by the Appellant occurred in her last two years at Fairwinds.[100] Hecksher’s other evidence is far too attenuated from her circumstances to show that sexual abuse was a legitimate concern of the school at the time that required Fairwinds institute training to its staff. During the time Hecksher attended Fairwinds, the school did not know, and could not have reasonably, known, of Hecksher’s sexual abuse. Nor does the *1212 record reveal that any Fairwinds’ teacher had been subject to prior allegations of sexual abuse. Under the circumstances presented in the this case, the absence of evidence of prior sexual abuse by Sterling or other teachers, coupled with the disciplinary actions Fairwinds took against Sterling based on the improper conduct of which it was aware, lead me to conclude that no reasonable juror could find Fair-winds grossly negligent in failing to implement a sexual abuse training program.
As to the “red flags” themselves, I do not find the evidence offered by Hecksher adequate to survive summary judgment under a gross negligence standard. This is not a case in which there were multiple complaints of sexual abuse made to, and ignored by, Fairwinds’ administration.[101] Hecksher concedes that she did not complain to any school official about Sterling’s misconduct. Instead, she bases her claim on the knowledge that school officials possessed regarding certain contacts Sterling had with her, and Sterling’s alleged inappropriate conduct toward two other students in unrelated incidents that took place in or' about 1990, Hecksher’s last year at Fairwinds.[102]
The record makes clear, however, that no Fairwinds official possessed actual knowledge of the inappropriate sexual nature of Sterling’s relationship with Hecksher. In fact, the only improper physical contact between Hecksher and Sterling alleged to have been witnessed by the Fairwinds staff was his “tap[ping] [her] on the butt” in front of “[a]ll of the faculty.”[103] I do not find this evidence sufficient for a jury to determine that Fairwinds officials should have been aware that Sterling was sexually abusing Hecksher and thus consciously disregarded the obvious consequences of its inaction.
As to the two formal complaints against Sterling, each involved different students and unrelated incidents, and neither provided Fairwinds officials with any evidence that Sterling may have been sexually abusing Hecksher. The first complaint stemmed from an inappropriate comment made by Sterling to a female student,[104] and the second resulted from Sterling’s inappropriate rubbing of another female student’s back.[105] Sterling was counseled by the school after each incident, and both complaints are plainly insufficient to alert Fairwinds to the possibility that Sterling was sexually abusing his step-daughter,[106] who was not involved in either event.
Similarly, the fact that Sterling had a reputation as being “creepy” and took his step-daughter as a “date” to a school function is not sufficient evidence to create a genuine issue of material fact that Fair-winds was somehow indifferent in discovering his sexual abuse of Hecksher.
*1213 My reading of the Child Victim’s Act leads me to the conclusion that a plaintiff must offer direct evidence that an entity was grossly negligent to survive a motion for summary judgment. While I do not question the fact that “a student suffers extraordinary harm when subjected to sexual abuse by a teacher, and that [the] conduct is reprehensible and undermines the basic purposes of the educational system,” [107] the question on appeal is whether a third-party teacher’s knowledge of a student’s sexual abuse is attributable to a school that employs her despite its having no independent knowledge of the abuse. I believe that pursuant to the express language of the Act, this question should be answered in the negative,
j aiso find the other evidence offered by Hecksher to be ^sufficient to create a genuine iggue of material fact as to wheth. er Fairwinds was gT0Ssly negligent in supervising Sterling. No reasonable juror could determine otherwise. For all of these reasonS) j respectfully dissent.

. Restatement (Third) of Agency Section 5.03 (2006) provides:
For purposes of determining a principal’s legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent’s duties to the principal, unless the agent
(a) acts adversely to the principal as stated in § 5.04, or
(b) is subject to a duty to another not to disclose the fact to the principal.
The rationale for this rule rests on the idea that the principal has the ability to monitor the agent and to create incentives for properly handling information. See Restatement (Third) of Agency § 5.04, cmt. b (2006) ("A principal’s right to control an agent enables the principal to consider whether and how best to monitor agents to ensure compliance with these duties. A principal may not rebut the imputation of an agent’s notice of a fact by establishing that the agent kept silent.”).

. “The force of the imputation doctrine and its limited adverse interest exception are bolstered by an equally well-entrenched doctrine of agency law: the doctrine of respondeat superior .... The exception to respondeat superior is similar to the adverse interest exception to imputation, although phrased somewhat differently: if the agent acted outside of the scope of employment and intended to further no interest of the principal, the principal is not liable for the agent's actions.” See Mark J. Loewenstein, Imputation, The Adverse Interest Exception, and the Curious Case of The Restatement (Third) of Agency, 84 U. Colo. L. R?v. 305, 309-10 (2013).

. 10 Del. C. § 8145(b) (emphasis added).

. See Restatement (Second) of Agency §§ 219 and 229 (1958) (providing that an employer is liable for an employee’s acts done within the scope of employment); Fisher v. Townsends, Inc., 695 A.2d 53, 58 (Del.1997) ("[I]f the principal is the master of an agent who is a servant, the fault of the agent, if acting within the scope of employment, will be imputed to the principal by the doctrine of respondeat superior."); Greco v. Univ. of Delaware, 619 A.2d 900, 903 (Del.1993) ("[Wjhere the alleged basis for the liability of an employer is the negligence of an employee, ‘the employer cannot be held liable unless the em *1210 ployee is shown to be liable.' Hence, generally, if absence of culpabilily on the part of the employee to the injured person has been established by litigation, the employer cannot be held liable to the injured person.”) (internal citations and quotations omitted); see also J.I. Kislak Mtg. Corp. v. William Matthews Bldr., Inc., 287 A.2d 686, 689 (Del.Super.1972), aff'd, 303 A.2d 648 (Del.1973) ("Notice of an agent acquired while acting within the scope of his authority is imputable to the principal.”) (internal citations omitted).

. Restatement (Second) of Agency § 219 (1958).

. Zhurbin v. State, 104 A.3d 108, 110 (Del.2014) ("Where a statute contains unambiguous language that clearly reflects the intent of the legislature, then the language of the statute controls.”) (internal quotations omitted).

. See Sheehan v. Oblates of St. Francis de Sales, 15 A.3d 1247, 1257 (Del.2011) ("The General Assembly, in Section 8145, made a policy decision to set gross negligence as the floor ... for invoking the statute’s applicability.”).

. See Stoneking v. Bradford Area School Dist., 882 F.2d 720, 722 (3d Cir.1989).

. See Cohen v. Kids Peace Nat. Centers, Inc., 256 Fed.Appx. 490, 492 (3d Cir.2007) (“Gross negligence is generally a question of fact for the jury to decide. However, a court may decide the issue as a matter of law where the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence.”) (internal citations and quotations omitted).

. Brown v. United Water Delaware, Inc., 3 A.3d 272, 276 (Del.2010).

. Jardel Co., Inc. v. Hughes, 523 A.2d 518, 530 (Del.1987).

. Parker v. Wireman, 2012 WL 1536934, at *3 (Del.Super.Apr. 30, 2012) (internal quotations omitted).

. Id. (quoting McHugh v. Brown, 125 A.2d 583, 586 (Del.1956)); see also Black's Law Dictionary (2014) (defining "gross negligence” as: "A lack of even slight diligence or care.... The difference between gross negligence and ordinary negligence is one of degree and not of quality. Gross negligence is traditionally said to be the omission of even such diligence as habitually careless and inattentive people do actually exercise in avoiding danger to their own person or property.”).

. Sandy testified that Sterling took Hecksher to the Junior/Senior Banquet because Hecksher wanted to go and Sandy had no interest in going. Hecksher was 15 years old at the time of the banquet. Appellant’s Op. Br.App. at 399-400.

. Restatement (Second) of Torts § 317 provides that employers have a duty to control their employees, even when they act outside the scope of their employment, to protect against an unreasonable risk of harm to others only when the employer knows, or has reason to know, of the necessity for such control. In this case, Hecksher put forth sufficient evidence to show that Sandy was aware that Sterling was sexually abusing her, but failed to show that any Fairwinds’ official knew, or had reason to know of the abuse.

. See 16 Del. C. § 903 (1976).

. As noted in the Majority Opinion, Sandy testified that she was unaware of her statutory duty to report sexual abuse, but that if she had known Hecksher was being sexually abused by Sterling, she would have called the police. Appellant’s Op. Br.App. at A404.

. 10 Del. C. § 8145(b) ("[Djamages against the legal entity shall be awarded ... only if there is a finding of gross negligence on the part of the legal entity.”) (emphasis added).

. See Kline ex rel. Arndt v. Mansfield, 255 Fed.Appx. 624, 630 (3d. Cir.2007) (''[Plaintiff's] reliance on instances of possible sexual abuse that were unknown to [school district] is also misplaced. Because this evidence was unknown, the failure to train school officials could not be perceived as a conscious or deliberate choice on [school district’s] part.”).

. See, e.g., Stoneking, 882 F.2d at 725-26 (denying defendant school officials' motion for summary judgment based, in part, on the fact that they had received at least five complaints about sexual assaults on female students by teachers and staff members); CM. v. Southeast Delco Sch. Dist., 828 F.Supp. 1179, 1185 (E.D.Pa.1993) (denying summary judgment “in light of [repeated complaints and] what defendants allegedly knew about [teacher’s] conduct”)'.

. Appellant's Op. Br.App. at A147.

. Appellant's Op. Br.App. at A285.

. Appellant’s Op. Br.App. at A147.

. Appellant's Op. Br.App. at A147.

. See Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 279, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1988) (finding that in a Title IX action, a principal's knowledge of a teacher’s inappropriate comment was insufficient to show that the school was deliberately indifferent in discovering teacher's sexual relationship with student).

. Id. at 292, 118 S.Ct. 1989.