

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-2007

# Cohen v. Kids Peace Natl Ctr

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3041

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Cohen v. Kids Peace Natl Ctr" (2007). *2007 Decisions.* Paper 217.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3041
_____

MALEKA COHEN, ADMINISTRATRIX OF THE
ESTATE OF CHLOE COHEN, DECEASED;
REUBEN COHEN

Appellants

v.

KIDS PEACE NATIONAL CENTERS, INC.;
KIDS PEACE NATIONAL CENTERS OF PENNSYLVANIA, INC.;
WYLIE HOUSE; MILTON ADAMS, M.D.
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-00713)
District Judge:  Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
October 22, 2007

Before:  FISHER, ALDISERT and GREENBERG, *Circuit Judges*.

(Filed: November 14, 2007 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Reuben and Maleka Cohen[1] appeal the District Court's decision to grant summary judgment in favor of KidsPeace National Centers, Inc. ("KidsPeace") and Milton Adams, M.D. The District Court found that there were no genuine issues of material fact and concluded that the uncontested facts could not constitute gross negligence as a matter of law. For the reasons set forth below, we will affirm the judgment of the District Court.

## I.

We write exclusively for the parties, who are familiar with the factual and procedural background of the case, and thus we set forth only the facts necessary to our analysis. Chloe Cohen, the daughter of Reuben and Maleka Cohen, suffered from a long history of mental illness, including aggression disorders, eating disorders, and suicidal ideation. On January 9, 2002, KidsPeace admitted Chloe, who was sixteen years old, into its residential treatment facility in Orefield, Pennsylvania. Upon her admission, Dr. Milton Adams, a child psychiatrist and independent contractor of KidsPeace, performed an initial psychiatric evaluation of Chloe, and found that she was not at risk of committing suicide.[2] At the time of her admission, Dr. Adams and KidsPeace had not yet obtained Chloe's past medical records.

---

[1] Maleka Cohen brought the claim individually and as a representative of the estate of her daughter, Chloe Cohen.

[2] Dr. Adams also spoke with her parents at that time, and Reuben Cohen claims that he informed Dr. Adams that Chloe had suicidal ideation in the past. However, Dr. Adams claims that Reuben Cohen did not tell him about Chloe's suicidal ideation.

On February 19, 2002, Chloe spoke with Alice Kwiatkowski, the supervisor of the unit in which Chloe lived, about her unhappiness at KidsPeace. She then stated, "I might as well kill myself."[3] Kwiatkowski reported this comment to Elizabeth Balliet, Chloe's social worker, on the same day. Balliet took three steps in response: (1) she spoke with Chloe directly about the comment; (2) she left a message for Dr. Adams regarding Chloe;[4] and (3) she wrote about the incident in the Communicator Log, stating:

> "Staff – In regard to Chloe. As you are all aware she is making the statement that she feels like killing herself. We spoke about this feeling at some length and tried to identify why[.] . . . I questioned if she had a plan to kill herself[;] she said 'I don't know, I'd probably cut myself.' . . . She was more cheery and motivated toward the end of our session. I gave her an assignment to work on, which she agreed to. I know you are all aware of this, but just keep a close eye on her and keeping her in common areas would be best."

On February 20, 2002, Dr. Adams assessed Chloe. The next day, Jackie Krainski, the assistant supervisor of the unit in which Chloe lived, permitted Chloe to go to her room to shower by herself. Approximately ten to thirty minutes later, Kwiatkowski checked on Chloe and found that she had committed suicide using a sash from her bathrobe.

_____

[3]KidsPeace had a policy for "Suicide Ideation/Gestures/Attempts" dated December 7, 2001 ("KidsPeace Suicide Policy"). The KidsPeace Suicide Policy requires the staff member to "immediately notify the supervisor" and then write an incident report. The supervisor must then arrange for the social worker, therapist, or other clinician to interview the child as soon as possible. The person who conducts the interview must then determine the seriousness of the child's threat and what precautions the staff should take.

[4]Although Balliet claims that she informed Dr. Adams that Chloe's statement expressed suicidal ideation, Dr. Adams remembers the message as stating only that Chloe was "distraught."

On February 19, 2004, the Cohens instituted this lawsuit against the defendants, alleging that they committed gross negligence in their dealings with Chloe that ultimately led to her suicide.[5]  The defendants filed a motion for summary judgment, arguing that the undisputed facts do not demonstrate gross negligence as a matter of law.  On May 15, 2006, the District Court granted the motion for summary judgment in favor of the defendants.  The Cohens filed this timely appeal.

## II.

The District Court had jurisdiction over this case under 28 U.S.C. § 1332, and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a District Court's grant of a motion for summary judgment, viewing the facts in the light most favorable to the non-moving party.  *Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006).  Summary judgment is proper if "there is no genuine issue as to any material fact, and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).

## III.

The Cohens appeal the District Court's decision to grant summary judgment in favor of the defendants.  Under the Pennsylvania Mental Health Procedures Act ("MHPA"), 50 Pa. Stat. Ann. § 7114(a), which neither party disputes applies to the

---

[5]On February 21, 2006, the Cohens agreed to dismiss the claims against KidsPeace National Centers of Pennsylvania, Inc. and Wylie House.

4

present case, the standard of care is gross negligence.[6]  The Supreme Court of

Pennsylvania has defined gross negligence as "a form of negligence where the facts

support substantially more than ordinary carelessness, inadvertence, laxity, or

indifference.  The behavior of the defendant must be flagrant, grossly deviating from the

ordinary standard of care."  *Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1164 (Pa.

1997) (quoting *Bloom v. DuBois Reg'l Med. Ctr.*, 597 A.2d 671, 679 (Pa. Super. Ct.

1991)).  Gross negligence is generally a question of fact for the jury to decide.  *Id.* at

1164-65.  However, a court may decide the issue as a matter of law where "the conduct in

question falls short of gross negligence, the case is entirely free from doubt, and no

reasonable jury could find gross negligence."  *Id.* at 1165.

The present facts are insufficient to support a finding that the defendants

committed gross negligence in their treatment of Chloe.  The Cohens argue that

KidsPeace was grossly negligent in not gathering and reviewing all of Chloe's past

medical records.  However, we have held that the "failure to access collateral sources of

data [about the plaintiff's medical history]" could, at best, amount to simple negligence.

---

[6]The MHPA states:
"In the absence of willful misconduct or gross negligence, a county
administrator, a director of a facility, a physician, a peace officer or any
other authorized person who participates in a decision that a person be
examined or treated under this act, . . . or that the restraint upon such person
be otherwise reduced, . . . shall not be civilly or criminally liable for such
decision or for any of its consequences."
50 Pa. Stat. Ann. § 7114(a).

5

*Doby v. DeCrescenzo*, 171 F.3d 858, 876 (3d Cir. 1999). Thus, even if KidsPeace had access to the collateral sources of information about Chloe's medical history, the failure to access it was simple negligence, not gross negligence.[7]

The Cohens also argue that the staff of KidsPeace did not follow the KidsPeace Suicide Policy, constituting gross negligence. However, the undisputed facts demonstrate that KidsPeace substantially followed its policy. Kwiatkowski reported Chloe's statement to her supervisor, Balliet, who evaluated Chloe on that same day. Balliet also called Dr. Adams to alert him that Chloe was upset,[8] and placed a note in the log that staff reads reflecting all of these events. Dr. Adams then evaluated Chloe the very next day. To the extent that Balliet did not follow the KidsPeace Suicide Policy, if at all, a jury could not find that KidsPeace committed gross negligence.[9]

---

[7]The Cohens argue that the District Court erroneously found that Chloe was never hospitalized for suicidal ideation alone, pointing to Chloe's hospitalization one month prior to her admission to KidsPeace. However, Chloe's hospitalization occurred based on homicidal threats and physical abuse of her mother in addition to a suicidal threat. Thus, the District Court did not err in its conclusion.

[8]We agree with the District Court that the information that Balliet conveyed to Dr. Adams is immaterial. Regardless of the content of the message, Dr. Adams conducted his own assessment of Chloe within one day of her making the statement.

[9]For the same reason, the Cohens' argument that some of the staff members were unaware of the KidsPeace Suicide Policy is unavailing. Furthermore, to the extent that the Cohens argue that a staff member should have accompanied Chloe to the shower, we agree with the District Court that the staff exercised professional judgment that was not grossly negligent.

6

The Cohens also allege that Dr. Adams did not properly assess Chloe as a suicide risk. However, we have held the "failure to evaluate adequately [the plaintiff's] suicidality" does not constitute gross negligence. *Doby*, 171 F.3d at 876. Here, Dr. Adams performed two evaluations of Chloe's suicide risk, including one immediately after she made the statement to Kwiatkowski. His erroneous conclusion that she was not at risk of committing suicide was, at best, simple negligence.[10]

Finally, the Cohens rely on an expert opinion that the actions of the KidsPeace staff members and Dr. Adams constituted gross negligence. However, we have held that even where the plaintiff's expert testifies that the defendant committed gross negligence, the court can determine that, as a matter of law, the plaintiff cannot prove gross negligence. *See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 176 (3d Cir. 2004). Here, as discussed above, we find that the facts cannot demonstrate gross negligence as a matter of law.

---

[10]The Cohens argue that Dr. Adams was grossly negligent because Reuben Cohen informed Dr. Adams of Chloe's past suicidal ideation. However, in *Albright*, the court found that the hospital was not grossly negligent because it "solicited information concerning [the patient's] condition and exercised its judgment as to what course of action was appropriate at that time." 696 A.2d at 1166. Thus, even if Reuben Cohen informed Dr. Adams of Chloe's past suicidal ideation, Dr. Adams was not grossly negligent because he solicited necessary information from Chloe and exercised his judgment in treating her.

7

IV.

We have reviewed all of the arguments raised by the parties and find that additional discussion is not necessary. For the reasons set forth above, we will affirm the order of the District Court.