# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CHRISTOPHER A. AMALFITANO, )
as Administrator For THE ESTATE OF )
MARY SMITH and ROBLISHA )
SMITH, individually, )
 )
    Plaintiffs, ) C.A. No. N15C-08-219 ALR
 )
    v. ) JURY TRIAL DEMANDED
 )
OWEN COCOLIN and STATE OF )
DELAWARE DEPARTMENT OF )
SAFETY AND HOMELAND )
SECURITY DIVISION DELAWARE )
STATE POLICE, )
 )
    Defendants/Third Party Plaintiffs, )
 )
    v. )
 )
STEPHEN J. JEFFERIS, )
 )
    Third Party Defendant. )

Submitted: June 14, 2017
Decided: July 18, 2017

## MEMORANDUM OPINION

*Upon State Defendants' Motion for Summary Judgment*
**DENIED**

*Upon State Defendants' Motions in Limine*
**DENIED**

*Upon Plaintiffs' Motion in Limine*
**DENIED**

**ROCANELLI, J.**

This is a wrongful death case arising from the death of Mary Smith, who was killed on October 3, 2014 in a motor vehicle collision with Third-Party Defendant Stephen J. Jefferis ("Jefferis"). Defendant Trooper Owen Cocolin of the Delaware State Police ("Trooper Cocolin") was pursuing Jefferis at high speeds when Jefferis proceeded through a red stop signal at the intersection of Lea Boulevard and Philadelphia Pike in Wilmington, Delaware, and struck a vehicle carrying Ms. Smith as a passenger. Ms. Smith died as a result of the collision.

This civil action is brought by Ms. Smith's estate and daughter ("Plaintiffs") against Trooper Cocolin and the Delaware Department of Public Safety and Homeland Security, Division of State Police ("Delaware State Police"). Plaintiffs assert that Trooper Cocolin caused Ms. Smith's death by acting with gross negligence in his pursuit of Jefferis. For ease of reference, the Court refers to Trooper Cocolin and the Delaware State Police collectively as "State Defendants."

The State of Delaware has appeared on behalf of State Defendants and filed an Answer to Plaintiffs' Complaint. State Defendants deny liability and assert a number of affirmative defenses. State Defendants also seek third-party contribution and/or indemnification against Jefferis for liability arising from the incident.[1]

---

[1] Jefferis has appeared in this action by filing an Answer as a self-represented litigant, and State Defendants have served Jefferis with the Motion for Summary Judgment. Jefferis is committed to the custody of the Department of Correction as

Trial is scheduled to begin on August 14, 2017. The parties have completed discovery and State Defendants have moved for summary judgment. In addition, State Defendants and Plaintiffs have moved to preclude certain expert testimony at trial. To date, Jefferis has not filed a response to State Defendants' Motion for Summary Judgment or the pending Motions in Limine. This is the Court's Memorandum Opinion on State Defendants' Motion for Summary Judgment, State Defendants' Motions in Limine, and Plaintiffs' Motion in Limine.

## I.    FACTUAL BACKGROUND

On October 2, 2014, Trooper Cocolin was on-duty in an unmarked Delaware State Police vehicle when he received a report of two men using heroin in a Ford Mustang at a shopping center parking lot on Miller Road in Wilmington, Delaware. At approximately 9:08 p.m., Trooper Cocolin entered the shopping center parking lot and observed a Ford Mustang with two occupants. Jefferis was in the driver's seat of the Mustang while another man was in the passenger seat. Trooper Cocolin stopped his police vehicle near the left-side rear of the Mustang and activated his emergency lights. Trooper Cocolin exited his vehicle and approached the driver's side door of the Mustang.

Upon approaching the Mustang, Trooper Cocolin reportedly observed a hypodermic needle and other paraphernalia consistent with the use of heroin.

a result of criminal convictions arising from the October 2, 2014 motor vehicle accident and has a good time release date of October 31, 2041.

2

According to Trooper Cocolin, Jefferis noticed Trooper Cocolin outside the driver's side window of the Mustang and proceeded to move his hands away from Trooper Cocolin's line of sight. Trooper Cocolin responded by drawing his service weapon and ordering Jefferis to keep his hands visible. Jefferis pulled the Mustang out of its parking spot and exited the shopping center parking lot toward 37th Street.

Trooper Cocolin returned to his police vehicle and pursued Jefferis in close proximity as Jefferis operated the Mustang at high speeds around stopped vehicles and through intersections against red stop signals. Jefferis eventually struck the vehicle in which Ms. Smith was a passenger after running a red light at the intersection of Lea Boulevard and Philadelphia Pike. Investigating officers estimated that Jefferis was traveling at approximately 99 mph at the time of impact. Ms. Smith died as a result of the collision.

## II. APPLICABLE LAW AND LEGAL STANDARDS

State Defendants argue that Plaintiffs cannot establish a prima facie case of negligence because there is insufficient evidence that Trooper Cocolin proximately caused Ms. Smith's death. In addition, State Defendants assert that State Defendants are immune from liability pursuant to Section 4001 of the State Tort Claims Act ("Section 4001")[2] and Delaware's Authorized Emergency Vehicle

---

[2] 10 *Del. C.* § 4001.

3

Statute ("AEVS")[3] because there are no genuine issues of material fact as to whether Trooper Cocolin acted with gross negligence in initiating, conducting, or failing to terminate his pursuit of Jefferis.

Plaintiffs oppose State Defendants' Motion for Summary Judgment on the grounds that there are genuine issues of material fact as to whether Trooper Cocolin was grossly negligent and proximately caused Ms. Smith's death. In addition, Plaintiffs contend that Plaintiffs may proceed against the Delaware State Police pursuant to AEVS by establishing ordinary negligence as opposed to gross negligence.

## A.    Superior Court Civil Rule 56(c).

State Defendants have moved for summary judgment pursuant to Superior Court Civil Rule 56(c). The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] A genuine issue of material fact is one that "may reasonably be resolved in favor of either party."[5] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[6] At the motion for summary judgment phase, the Court must view the facts "in the light

---

[3] 21 *Del. C.* § 4106.
[4] Super. Ct. Civ. R. 56(c).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986).
[6] *Moore v. Sizemore*, 405 A.2d 679, 680–81(Del. 1979).

most favorable to the non-moving party."[7]  Summary judgment is appropriate if Plaintiffs' claims lack evidentiary support such that no reasonable jury could find in Plaintiffs' favor.[8]

## B.   Sovereign Immunity and Section 6511 of the Insurance for the Protection of the State Act.

State Defendants are eligible for sovereign immunity, which bars a lawsuit against the state or federal government in the absence of express consent from the legislature.[9]  Delaware courts are not empowered to disregard the doctrine of sovereign immunity.[10]  Rather, sovereign immunity must be waived pursuant to a clear statutory manifestation of intent by the General Assembly.[11]

---

[7] *Brozka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[8] *See Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200–05 (Del. 2015); *Edmisten v. Greyhound Lines, Inc.*, 2012 WL 3264925, at *2 (Del. Aug. 13, 2012).

[9] *See* U.S. CONST. amend. XI; DEL. CONST. art. 1, § 9; *Sherman v. State*, 133 A.3d 971, 975 (Del. 2016) (quoting *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004)); *Janowski v. Div. of State Police*, 981 A.2d 1166, 1169 (Del. 2009) (internal citations omitted).

[10] *Pajewski v. Perry*, 363 A.2d 429, 433 (Del. 1976) (citing *Shellhorn & Hill, Inc. v. State*, 187 A.2d 71, 74 (Del. 1962)).

[11] *Hartmann v. Sibbold*, 2010 WL 3397482, at *1 (Del. Aug. 30, 2010) (internal citations omitted); *Del. Dep't of Health & Soc. Servs. v. Sheppard*, 2004 WL 2850086, at *1 (Del. Dec. 10, 2004) (citing DEL. CONST. art. 1, § 9); *Pauley*, 848 A.2d at 573 (internal citations omitted); *Doe v. Cates*, 499 A.2d 1175, 1176–77 (Del. 1985) (citing *Shellhorn*, 187 A.2d at 74–75).

5

The General Assembly has waived sovereign immunity pursuant to Section 6511 of Delaware's Insurance for the Protection of the State Act ("Section 6511").[12] Section 6511 provides:

> The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.[13]

The Delaware Supreme Court has construed Section 6511 as a waiver of immunity "to the extent that either the State insurance program was funded by direct appropriation (self-insurance) or that the State purchased commercially available insurance to cover the loss."[14]

## C.    Section 4001 of the State Tort Claims Act.

The waiver of sovereign immunity through self-insurance does not necessarily mean that a lawsuit against the State is permissible. In *Pauley v. Reinhoehl*,[15] the Delaware Supreme Court articulated an additional prerequisite for a cause of action to proceed against the State or its officials. Specifically, *Pauley* requires Plaintiffs to demonstrate that (i) the State has waived the defense of sovereign immunity for the actions mentioned in the complaint; and (ii) Section

---

[12] 18 *Del. C.* § 6511. *Cates*, 499 A.2d at 1177 (citing *Pajewski*, 363 A.2d at 435–36).

[13] 18 *Del. C.* § 6511.

[14] *Sherman*, 133 A.3d at 975 (quoting *Pauley*, 848 A.2d at 573).

[15] 848 A.2d 569 (Del. 2004).

4001 does not bar the cause of action.[16]  The Delaware Supreme Court has held that Section 4001 is analyzed "only *after* an express intent to waive sovereign immunity has been identified."[17]

Section 4001 provides an additional limit to civil liability "where [the State] has, by some means independent of 10 *Del. C.* § 4001, waived immunity."[18] Section 4001 shields the State and its employees from liability if the State actor's conduct (i) arose out of and in connection with the performance of official duties involving the exercise of discretion, (ii) was performed in good faith, and (iii) was performed without gross or wanton negligence.[19]  Plaintiffs must establish the

---

[16] *Sheppard*, 2004 WL 2850086, at *1 (citing *Pauley*, 848 A.2d at 573).

[17] *Sheppard*, 2004 WL 2850086, at *1 (emphasis in original).  *See also Parker v. Wireman*, 2012 WL 1536934, at *1 (Del. Super. Apr. 30, 2012) (citing *J.L. v. Barnes*, 33 A.3d 902, 913 (Del. Super. 2011)); *Murphy v. Corr. Med. Servs. Inc.*, 2005 WL 2155226, at *3 (Del. Super. Aug. 19, 2005) (internal citations omitted). Decisional precedent indicates that civil liability may extend to State employees for individual acts or omissions, even if the State has not expressly waived sovereign immunity.  *See Christman v. Dep't of Health & Soc. Servs.*, 2014 WL 3724215, at *3 (Del. July 25, 2014) (citing *Jackson v. Minner*, 2013 WL 4538321, at *1 (Del. Aug. 23, 2013)); *Wireman*, 2012 WL 1536934, at *2 (Del. Super. Apr. 30, 2012) (citing *J.L.*, 33 A.3d at 914). *Cf. Bunkley*, 2016 WL 4146449, at *4 (refusing to consider the applicability of Section 4001 because State employees were not sued in an individual capacity).

[18] *Cates*, 499 A.2d at 1181.

[19] 10 *Del. C.* § 4001; *Christman v. Dep't of Health & Soc. Servs.*, 2014 WL 3724215, at *3 (Del. July 25, 2014) (quoting *Jackson v. Minner*, 2013 WL 4538321, at *1 (Del. Aug. 23, 2013)). *See also Hughes ex rel. Hughes v. Christiana Sch. Dist.*, 2008 WL 2083150, at *2 (Del. May 19, 2008) ("In other words, Section 4001 provides immunity to discretionary acts committed in good faith, in the course of the performance of official duties and without gross or wanton negligence.").

absence of one of these elements to defeat immunity under Section 4001.[20]  In circumstances involving a police officer, Section 4001 "strikes a balance between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury."[21]

## D.    Delaware's Authorized Emergency Vehicle Statute (AEVS).

AEVS extends certain privileges to the driver of an authorized emergency vehicle in pursuit of a criminal suspect.[22]  AEVS authorizes a driver to (i) park or stand, irrespective of the other provisions of Title 21 of the Delaware Code; (ii) proceed past red lights or stop signs, but only after slowing down as may be necessary for safe operation; (iii) exceed the speed limit in circumstances where the driver does not endanger life or property; and (iv) disregard regulations governing the direction of movement or turning in a specified direction.[23] Although AEVS's privileges typically apply if the driver "is making use of audible

---

[20] *Barnes*, 33 A.3d at 914 (citing 10 *Del. C.* § 4001); *Minner*, 2013 WL 4538321, at *1 ("The plaintiff has the burden of proving the absence of one or more of the elements of immunity").

[21] *McCaffrey v. City of Wilmington*, 133 A.3d 536, 547 (Del. 2016) (citing *Poe v. Leonard*, 282 F.3d 123, 131 (2d Cir. 2002)).

[22] 21 *Del. C.* § 4106(a).

[23] *Id.* at § 4106(b)(1)–(4).

or visual signals,"[24] AEVS expressly provides that "an authorized emergency vehicle operated as a police vehicle need not make use of such signals."[25]

In addition to extending certain privileges, AEVS sets forth specific standards of liability for the driver and owner of an authorized emergency vehicle. As to the driver, subsection (d) of AEVS provides:

> The driver of an emergency vehicle is not liable for damage to or loss of property or for any personal injury or death caused by the negligent or wrongful act or omission of such driver except acts or omissions amounting to gross or wilful or wanton negligence so long as the applicable portions of subsection (c) of this section [requiring the use of audible or visual signals for all emergency vehicles except police vehicles] have been followed.[26]

In the next sentence of subsection (d), AEVS differentiates between the driver of an authorized emergency vehicle and the owner of an authorized emergency vehicle, providing that "[t]he owner of such emergency vehicle may not assert the defense of governmental immunity in any action on account of any damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of such driver or owner."[27] A police vehicle is an "authorized emergency vehicle" under AEVS.[28]

---

[24] *Id.* at § 4106(c).
[25] *Id.*
[26] *Id.* at § 4106(d).
[27] *Id.*
[28] *Id.* at § 4106(e).

9

### III. DISCUSSION

**A.    There are Genuine Issues of Material Fact as to whether Trooper Cocolin Proximately Caused Ms. Smith's Death.**

State Defendants assert that the record lacks sufficient evidence of proximate cause. "In order to prevail in a negligence action, a plaintiff must show, by a preponderance of the evidence, that a defendant's negligent act or omission breached a duty of care owed to plaintiff in a way that proximately caused the plaintiff injury."[29]  Delaware courts utilize the "but-for" standard of causation,[30] and define proximate cause as a direct cause without which an injury would not have occurred.[31]  It is well-established that "there may be more than one proximate cause of an injury."[32]  Moreover, issues of proximate cause are typically fact-intensive and contrary to judicial resolution as a matter of law.[33]

---

[29] *Pavik v. George & Lynch, Inc.*, 2016 WL 5335792, at *3 (Del. Super. Sept. 22, 2016) (quoting *Duphily v. Del. Elec. Coop., Inc.*, 662 A.2d 821, 828 (Del. 1995)).

[30] *Ireland v. Gemcraft Homes, Inc.*, 2011 WL 4553166, at *3 (Del. Oct. 3, 2011); *Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 249 (Del. 2010) (citing *Jones v. Crawford*, 1 A.3d 299, 302 (Del. 2010)).

[31] *Spencer v. Goodill*, 17 A.3d 552, 554 (Del. 2011) (quoting *Chudnofsky v. Edwards*, 208 A.2d 516, 518 (Del. 1965)); *Doe v. Wildey*, 2012 WL 1408879, at *4 (Del. Super. Mar. 29, 2012) (quoting *Duphily*, 662 A.2d at 829).

[32] *Crawford*, 1 A.3d at 302 (quoting *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991)).

[33] *See Culver*, 588 A.2d at 1098; *Coker v. Tenney-Andrews*, 2016 WL 6659500, at *2 (Del. Super. Nov. 10, 2016) (quoting *Ebersole v. Lowengrub*, 180 A.2d 467, 469 (Del. 1962)); *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 WL 6772638, at *10 (Del. Super. Nov. 2, 2015) (citing *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1289 (Del. Super. 2001)).

Viewing the facts in a light most favorable to Plaintiffs, the record reflects that Trooper Cocolin attempted to apprehend Jefferis by drawing his service weapon and ordering Jefferis to keep his hands visible. If Trooper Cocolin's actions were limited to this initial encounter, Trooper Cocolin's relationship to Ms. Smith's death may be too attenuated for a jury to consider. However, viewing the facts in a light most favorable to Plaintiffs, Trooper Cocolin continued to pursue Jefferis at high speeds through red stop signals until Jefferis collided with Ms. Smith's vehicle. In consideration of Trooper Cocolin's continuing course of conduct and proximity to the ultimate collision, the record contains an adequate basis for a jury to conclude that "but-for" Trooper Cocolin's decision to initiate and continue the pursuit, Ms. Smith's death would not have occurred.

Delaware law does not require Trooper Cocolin to be the sole cause of Ms. Smith's death in order for Plaintiffs to recover.[34] Furthermore, it is not this Court's role to weigh evidence or resolve factual conflicts reflected in the record.[35] Rather, "if a rational trier of fact could find any material fact that would favor the non-moving party in a determinative way . . . summary judgment is inappropriate."[36]

---

[34] *See Crawford*, 1 A.3d at 302 (quoting *Culver*, 588 A.2d at 1097).

[35] *Cerberus Int'l, Ltd. v. Apollo Management, L.P.*, 794 A.2d 1141, 1149 (Del. 2002) (citing *Liberty Lobby*, 477 U.S. at 254).

[36] *Espinoza v. Zuckerberg*, 124 A.3d 47, 53 (Del. Ch. 2015) (omission in original) (quoting *Cerberus Int'l, Ltd.*, 794 A.2d at 1150). *See also Buchanan v. TD Bank, N.A.*, 2016 WL 3621102, at *2 (Del. Super. June 28, 2016) (noting that summary judgment is rare in negligence actions "because the movant must show 'not only

Viewing the record and making all reasonable inferences in a light most favorable to Plaintiffs, there are genuine issues of material fact regarding the nature and impact of Trooper Cocolin's conduct on the collision. A reasonable jury could conclude that Trooper Cocolin proximately caused Ms. Smith's death. Accordingly, the Court declines to relieve State Defendants from liability as a matter of law for insufficient evidence of proximate cause.

## B. The State has Waived Sovereign Immunity to the Extent of Coverage under the State's Automobile Insurance Policy.

Pursuant to Section 6511 and the General Assembly's mandate, the State has procured one million dollars of insurance coverage for liabilities arising from the operation of State-owned automobiles. The parties do not dispute that Trooper Cocolin is a State employee who was operating a State-owned automobile at the time of Ms. Smith's death. Accordingly, with respect to Plaintiffs' claims that relate to Trooper Cocolin's operation of his police vehicle, the State has waived the defense of sovereign immunity to the extent of coverage under the State's automobile insurance policy. *Pauley*'s initial requirement is satisfied.

---

that there are no conflicts in the factual contentions of the parties but that, also, the only reasonable inference to be drawn from the contested facts are adverse to the plaintiff.'") (quoting *Watson v. Shellhorn & Hill, Inc.*, 221 A.2d 506, 508 (Del. 1966)); *Rowe v. Estate of McGrory*, 2013 WL 2296076, at *2 (Del. Super. Apr. 12, 2013) ("Moreover, 'if it appears [to the Court] that there is *any reasonable hypothesis* by which the non-moving party might recover,' the motion will be denied.") (emphasis and alteration in original) (internal citations omitted).

12

**C. State Defendants are not entitled to Summary Judgment under Section 4001 or AEVS.**

Because this case involves a State employee acting in the scope of his employment for a State entity, State Defendants are eligible for immunity pursuant to Section 4001. Moreover, as the operator of an authorized emergency vehicle in pursuit of a criminal suspect, Trooper Cocolin is eligible for the privileges and heightened standard of liability under AEVS. Upon consideration of both Section 4001 and AEVS in light of the specific circumstances of this case, the Court finds that State Defendants are not entitled to judgment as a matter of law.

**i. Plaintiffs must establish a genuine issue of material fact as to gross negligence in order to proceed against Trooper Cocolin.**

Plaintiffs must establish a genuine issue of material fact as to gross negligence in order to survive State Defendants' Motion for Summary Judgment as to Trooper Cocolin. First, AEVS plainly requires Plaintiffs to establish "gross or wilful or wanton negligence" to hold Trooper Cocolin, the driver of an authorized emergency vehicle, liable for Ms. Smith's death.[37] In addition, as to Section 4001, Plaintiffs must also establish gross negligence by Trooper Cocolin because Plaintiffs cannot establish either of the other two possible avenues for relief, i.e. ministerial action or bad faith. In other words, because Trooper Cocolin was

---

[37] 21 *Del. C.* § 4106(d).

acting in good faith and exercising discretion, gross negligence must be established to satisfy Section 4001 as a matter of law.[38]

With respect to Section 4001(1), Plaintiffs cannot establish that Trooper Cocolin's pursuit of Jefferis constitutes a non-discretionary act. A discretionary act is where "there is no hard and fast rule as to [the] course of conduct that one must or must not take."[39] In contrast, "[a]n act is ministerial if the act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act."[40] Here, the Court finds that the pursuit of a fleeing criminal suspect is not subject to "hard and fast" rules that leave no room for discretion. Although Plaintiffs assert that the Delaware State Police maintain a Pursuit Policy that contains ministerial guidelines for initiating and conducting a pursuit, the Pursuit Policy expressly provides that all pursuits are subject to an officer's discretion with the public safety as the primary focus.[41] With respect to Section 4001(2), Plaintiffs cannot establish that Trooper Cocolin acted in bad faith. Rather, the record establishes that Trooper Cocolin had an honest intention to serve the public interest by apprehending a fleeing criminal suspect.

---

[38] *See supra* n. 21.
[39] *J.L.*, 33 A.3d at 914 (alteration in original) (quoting *Estate of Martin v. State*, 2001 WL 112100, at *5 (Del. Super. Jan. 17, 2001)).
[40] *Hughes ex rel. Hughes*, 2008 WL 2083150, at *3 (quoting *Sussex Cty. v. Morris*, 610 A.2d 1354, 1358–59 (Del. 1992)).
[41] *See* Del. State Police Vehicle Pursuit Policy (A42–A63).

Accordingly, gross negligence is the legal standard for Plaintiffs to prevail against Trooper Cocolin under either AEVS or Section 4001.

### ii. Plaintiffs may proceed against the Delaware State Police for Trooper Cocolin's ordinary negligence pursuant to AEVS.

By its very terms, Section 4001 is subject to the requirements of other Delaware laws.[42] As previously noted, the Court finds that AEVS is applicable to this case because Trooper Cocolin is the driver of an authorized emergency vehicle in pursuit of a fleeing criminal suspect. AEVS unambiguously provides that the owner of an authorized emergency vehicle (in this case, the Delaware State Police) "may not assert the defense of governmental immunity . . . on account of personal injury or death caused by the negligent or wrongful act or omission" of the vehicle's driver.[43] The Court finds that this statute prevents the Delaware State Police from asserting "immunity" pursuant to Section 4001[44] in order to avoid

---

[42] 10 *Del. C.* § 4001 ("Except as otherwise provided by the Constitutions or laws of the United States or of the State of Delaware, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction . . . .").

[43] 21 *Del. C.* § 4106(d).

[44] *See* 10 *Del. C.* § 4001 (". . . the plaintiff shall have the burden of proving the absence of 1 or more of the elements of *immunity* as set forth in this section.") (emphasis added); *id.* (providing that the "*immunity* of judges, the Attorney General and Deputy Attorneys General, and members of the General Assembly shall, as to all civil claims or causes of action founded upon an act or omission arising out of the performance of an official duty, be absolute . . . .") (emphasis added); *McCaffery*, 133 A.3d at 546 ("Like qualified immunity under federal law, *immunity* under the Tort Claims Act is not merely a 'defense to liability,' but rather an '*immunity* from suit' for damages") (emphasis added) (internal citations omitted); *Hanson v. Morton*, 67 A.3d 437, 442 (describing several public policy

15

liability arising from Trooper Cocolin's ordinary negligence. Accordingly, Plaintiffs may proceed against the Delaware State Police for the negligent conduct of Trooper Cocolin that is not otherwise privileged pursuant to subsection (b) of AEVS[45] to the extent of coverage under the State's automobile insurance policy.

### iii. Standards for ordinary negligence and gross negligence.

Ordinary negligence is "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm, not including conduct recklessly disregardful of the interest of others."[46] An act is negligent if a

---

reasons in favor of extending "immunity protections" of the Tort Claims Act to court-appointed counsel); *J.L.*, 33 A.3d at 914 (referring to Section 4001 as a form of governmental immunity known as "qualified immunity"); State Defs' Opening Br. Supp. Mot. Summ. J. at 17, 22, 25–26 (referring to Section 4001 as a form of statutory "immunity" for government officials).

[45] *See Mathangani v. Hevelow*, 2016 WL 3587192, at *1 (Del. Super. June 27, 2016) ("However, the Court will allow this civil action to proceed against the owner of [the officer's] vehicle to the extent that the claims are based upon allegations of negligence against [the officer] that involve conduct not covered by the enumerated privileges of the AEVS."); *id.* at *6 (Under both [Section 4001 and AEVS], the Delaware State Police, the Deparament of Safety and Homeland Security and the State – whoever is determined to be the owner of [the officer's]vehicle – can be liable for [the officer's] ordinary negligence otherwise not privileged under the AEVS."); *Sikander v. City of Wilmington*, 2005 WL 1953040, at *4 (Del. Super. July 28, 2005), *aff'd*, 2006 WL 686589 (Del. Mar. 17, 2006) ("In this case, if [the officer] was, at the time of the accident, engaged in conduct authorized by Section 4106(b), he was privileged to do so and was not negligent.").

[46] *Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 7 (Del. 2013) (internal quotations and citations omitted).

reasonable person would recognize that the act involves an unreasonable risk of harm to others.[47]

Gross negligence is a heightened standard of negligence that is defined as "an 'extreme departure from the ordinary standard of care' that 'signifies more than ordinary inadvertence or inattention.'"[48] The Delaware Supreme Court has equated gross negligence to criminal negligence under Delaware's criminal code,[49] characterizing the applicable standard as the failure "to perceive a risk . . . of such nature that failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[50] "Ordinarily, questions of gross negligence and willful or wanton conduct are for the jury and are not susceptible of summary adjudication."[51] However, summary judgment may be appropriate "where the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence."[52]

---

[47] *Id.*

[48] *Herksher*, 115 A.3d at 1199 (internal citations omitted).

[49] *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).

[50] 11 *Del. C.* § 231.

[51] *Brown v. United Water Del., Inc.*, 3 A.3d 272, 276 (Del. 2010) (citing *Pauley*, 848 A.2d at 576).

[52] *Herksher*, 115 A.3d at 1210 (Vaughn, J., dissenting) (quoting *Cohen v. Kids Peace Natl Ctrs., Inc.*, 256 Fed. Appx. 490, 492 (3d Cir. 2007)).

**iv. There are Genuine Issues of Material Fact as to whether Trooper Cocolin was Grossly Negligent.**

Decisional law and the Delaware State Police Pursuit Policy both indicate that whether an officer conformed his conduct to the applicable standard of care during a vehicular pursuit is dependent on a myriad of factors and the totality of the circumstances in each case.[53] Here, the Court finds genuine factual disputes regarding whether Trooper Cocolin's decision to initiate and continue the pursuit of Jefferis constituted a "gross deviation from the standard of conduct that a reasonable [police officer] would observe in the situation."[54] Specifically, the record contains factual inconsistencies regarding the parties' respective rates of speed, the presence of vehicular or pedestrian traffic in the area of pursuit, the availability of safer alternatives to continuing the pursuit, whether Trooper Cocolin conformed his conduct to the Delaware State Police Pursuit Policy's guidelines, and whether the likelihood of injury to innocent bystanders outweighed the

---

[53] *See City of Jackson v. Lewis*, 153 So.3d 689, 694 (Miss. 2014); *Gray v. Boyd*, 757 S.E.2d 773, 779 (W. Va. 2014); *Ray v. Broken Arrow Police Dep't.*, 238 P.3d 931, 933 (Okla. 2010); *Crawford*, 1 A.3d at 304; *Gates v. Leonbruno*, 70 N.E.3d 1110, 1121–22 (Ohio Ct. App. 2016); *Estate of Rae v. Murphy*, 2006 WL 1067277, at *3 (Del. Super. Apr. 19, 2006), *aff'd*, 956 A.2d 1266 (Del. 2008); Del. State Police Vehicle Pursuit Policy (A42–A63).

[54] *Jardel*, 523 A.2d at 530 (citing 11 *Del. C.* § 231).

immediate need to apprehend Jefferis. The Court finds that resolution of these issues by a jury is necessary.[55]

State Defendants contend that a jury cannot find Trooper Cocolin negligent for exceeding the speed limit or disregarding traffic signals during the pursuit because such actions are privileged under subsection (b) of AEVS. The Court agrees that, to the extent that Trooper Cocolin engaged in conduct that is authorized under subsection (b) of AEVS, he was privileged to do so.[56] However, the determination of whether Trooper Cocolin's conduct was privileged under AEVS is still a factual inquiry. For example, AEVS allows the driver of an authorized emergency vehicle to proceed past a stop signal, "but only after slowing down as may be necessary for safe operation."[57] Similarly, AEVS allows the driver of an authorized emergency vehicle to exceed speed limits "so long as the driver does not endanger life or property."[58] Under the plain language of these provisions, AEVS requires a certain measure of caution before a driver may engage in conduct that would subject the driver to liability under ordinary circumstances. There is a genuine factual dispute as to whether Trooper Cocolin

---

[55] *See Ebersole*, 180 A.2d at 468–69 ("Nor will summary judgment be granted if, pon examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances.") (citing *Knapp v. Kinsey*, 249 F.2d 797, 804 (6th Cir. 1957)).
[56] *See Sikander*, 2005 WL 1953040, at *4.
[57] 21 *Del. C.* § 4106(b)(2).
[58] *Id.* at § 4106(b)(3).

exercised this requisite level of caution. Moreover, the Delaware Supreme Court has noted that the privileges of AEVS do not apply in circumstances where a driver acts with gross negligence.[59] The Court finds that the applicability of AEVS to Trooper Cocolin's conduct is dependent upon fact-finding that is contrary to judicial resolution as a matter of law. The question of whether Trooper Cocolin acted within the standards required by statute involves issues of fact that must be resolved by a jury.

The Delaware Supreme Court has recognized that police must terminate a high speed pursuit in certain circumstances to protect innocent members of the public, and that "a vehicular police chase initiated or conducted in a grossly negligent manner *could*, in some circumstances, proximately cause an injury."[60] Moreover, the determination of whether conduct rises to the level of gross or wanton negligence "is ordinarily one for the trier of fact. Only where the facts permit reasonable persons to draw but one inference – adverse to the non-moving party –is a moving party entitled to a finding and judgment as a matter of law."[61] In this case, viewing the evidence and drawing all reasonable inferences in a light most favorable to Plaintiffs, there are genuine issues of material fact that could

---

[59] *See Hubbard v. Dunkleberger*, 1995 WL 131789, at *3 (Del. Mar. 16, 1995).

[60] *Crawford*, 1 A.3d at 304 (emphasis in original).

[61] *McCaffery*, 133 A.3d at 547 (quoting *Eustice v. Rupert*, 460 A.2d 507, 509 (Del. 1983)).

lead to a finding that Trooper Cocolin acted with gross negligence in initiating, conducting, or failing to terminate his pursuit of Jefferis.

Because a reasonable jury may conclude that the standard of gross negligence is satisfied, the Court finds that Trooper Cocolin is not entitled to judgment as a matter of law pursuant to Section 4001 or AEVS. Moreover, because a reasonable jury may conclude that Trooper Cocolin acted negligently in a manner that is not privileged under AEVS, the Court finds that the Delaware State Police are not entitled to judgment as a matter of law.

## IV. MOTIONS IN LIMINE

Plaintiffs and State Defendants have both filed Motions in Limine pertaining to the opinion testimony of each party's expert on law enforcement procedure. State Defendants seek to exclude the opinion of Plaintiffs' expert Dr. Michael Lyman that Trooper Cocolin conducted the pursuit with gross negligence under the Delaware State Police Pursuit Policy and other national standards. State Defendants contend that this opinion is unduly prejudicial and an impermissible legal conclusion. Similarly, Plaintiffs seek to exclude the opinion of State Defendants' expert Dr. William Toms that Trooper Cocolin did *not* conduct the pursuit of Jefferis with gross negligence on the grounds that the opinion is an impermissible legal conclusion. State Defendants also seek to exclude other opinions of Dr. Lyman pertaining to Trooper Cocolin and Jefferis' conduct during

21

the pursuit on the grounds that the opinions are unsupported by the record and exceed the scope of Dr. Lyman's expertise.

## A. Applicable Rules of Evidence.

The Court finds that the applicable Delaware Rules of Evidence ("DRE") are as follows:

### i. DRE 401–403.

DRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." DRE 402 provides that "all relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible." DRE 403 establishes a balancing test of admissibility, instructing the Court to determine whether the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

### ii. DRE 702 & DRE 704.

The admissibility of expert testimony is governed by DRE 702, which provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,

a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Delaware courts apply the analytical framework set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[62] Consistent with *Daubert*, the Court considers a five-step test to determine whether expert testimony is admissible at trial.[63] The Court must determine whether:

(1) the witness is qualified as an expert by knowledge, skill, experience, training or education;
(2) the evidence is relevant;
(3) the expert's opinion is based upon information reasonably relied upon by experts in that particular field;
(4) the expert testimony will assist the trier of fact to understand the evidence or determine a material fact in issue; and
(5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[64]

The party seeking to introduce expert testimony bears the burden of establishing admissibility by a preponderance of the evidence.[65]

---

[62] *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 521–22 (Del. 1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

[63] *Bowen v. E.I. DuPont de Nemours & Co.*, 906 A.2d 787, 795 (Del. 2006).

[64] *Smith v. Grief*, 2015 WL 128004, at *2 (Del. Jan. 8, 2015) (citing *Bowen*, 906 A.2d at 794); *Pallano v. AES Corp.*, 2016 WL 750432, at *3 (Del. Super. Feb. 26, 2016).

[65] *Pavey v. Kalish*, 2010 WL 3294304, at *3 (Del. 2010); *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 584 (Del. 2007).

The decision to admit expert testimony is not a conclusion that the expert's opinion is correct. Rather, the trial judge's role as gatekeeper[66] is limited to determining "whether the proponent of the evidence has demonstrated that scientific conclusions have been generated using sound and reliable approaches."[67] Moreover, DRE 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact."

**B.    Both Witnesses are Qualified as Experts and the Challenged Opinions are Admissible.**

Dr. Lyman and Dr. Toms' testimony is not inadmissible merely because the testimony embraces issues of negligence that must be resolved by the trier of fact.[68] Rather, upon a preponderance of the evidence,[69] the Court finds that both experts have the requisite basis of specialized knowledge and experience to qualify as experts in law enforcement procedures, and that scientific conclusions were generated using sound and reliable approaches. Moreover, the experts both offer opinions that are relevant to the issues in this case and that will assist the jury in assessing whether Trooper Cocolin deviated from the appropriate level of care for a police pursuit that is required by local and national standards. As to State

---

[66] *Pavey*, 2010 WL 3294304, at *3; *Sturgis*, 942 A.2d at 583.

[67] *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. 2006) (citing *In re Paoli R. R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

[68] DRE 704.

[69] *Bowen*, 906 A.2d at 795.

Defendants' contentions, the Court is satisfied that Dr. Lyman's testimony is within his expert qualifications and has a sufficient basis in professional literature and the factual record.

The Court finds that both Dr. Lyman and Dr. Toms are competent to testify as expert witnesses in the field of law enforcement procedures and that the probative value of their opinions is not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. "Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than its admissibility."[70] Because both experts are qualified to offer their opinions regarding the pursuit, the Court finds that the parties' evidentiary challenges go to the weight of the testimony and not its admissibility. Plaintiffs and State Defendants may challenge Dr. Lyman and Dr. Toms' opinions through the traditional means of attacking admissible evidence, including cross-examination and presentation of competing evidentiary theories.[71]

## V.    CONCLUSION

For the reasons stated, the Court hereby finds that, when viewing the evidence and drawing all reasonable inferences in a light most favorable to the

---

[70] *Perry v. Berkley*, 996 A.2d 1262, 1270–71 (Del. 2010) (quoting *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283 (8th Cir. 1995)).

[71] *See State v. Phillips*, 2015 WL 5168253, at *4 (Del. Super. Sept. 2, 2015) (citing *Daubert*, 509 U.S. at 596).

Plaintiffs, the non-moving parties, there are genuine issues of material fact in dispute. The record contains sufficient evidence for a reasonable jury to find in favor of Plaintiffs. Accordingly, judgment as a matter of law as to State Defendants is inappropriate. Furthermore, the Court finds that the expert witnesses in this case are qualified and offer admissible opinions under the Delaware Rules of Evidence. Accordingly, both State Defendants and Plaintiffs' Motions in Limine are denied.

**NOW, THEREFORE, this 18th day of July, 2017, State Defendants' Motion for Summary Judgment is hereby DENIED; State Defendants' Motion in Limine to Preclude Testimony that Trooper Cocolin Should Have Blocked Jefferis' Car is hereby DENIED; State Defendants' Motion in Limine to Preclude Certain Opinion Evidence from Dr. Michael Lyman is hereby DENIED; State Defendants' Motion to Preclude Opinion Evidence that Trooper Cocolin Was Grossly Negligent in his Decision to Pursue Jefferis is hereby DENIED; and Plaintiffs' Motion in Limine to Preclude Testimony That Trooper Cocolin Was Not Grossly Negligent in his Decision to Pursue Jefferis is hereby DENIED.**

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**

26