**Terry HANSON, Defendant Below, Appellant,**

v.

**Carl and Pamela MORTON, Plaintiffs Below, Appellees.**

**No. 557, 2012.**

Supreme Court of Delaware.

Submitted: April 10, 2013.
Decided: June 11, 2013.

17. *See id.*

Michael P. Kelly, Esquire (argued), and Daniel J. Brown, Esquire, of McCarter & English, LLP, of Wilmington, Delaware for Attorney X.

Edward P. Welch, Esquire, and Sarah Runnells Martin, Esquire (argued), of Skadden, Arps, Slate, Meagher & Flom, LLP, of Wilmington, Delaware for amicus curiae the Family Court of the State of Delaware.

Mary M. MaloneyHuss, Esquire, Cathy J. Testa, Esquire, Catherine Hagerty Thompson, Esquire, and Geoffrey Gamble, Esquire, of Wilmington, Delaware, for amici curiae E.I. du Pont de Nemours and Company and W.L. Gore & Associates, Inc.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

This is a proceeding, under Article IV, Section 11(8) of the Delaware Constitution and Supreme Court Rule 41, on questions of law certified by the Family Court of the State of Delaware and accepted by this Court. In this opinion we address whether in-house counsel appointed by the Family Court to represent indigent parties in dependency and neglect proceedings have qualified immunity from malpractice liability. We also address whether lack of professional malpractice insurance coverage constitutes "good cause" to withdraw from courtappointed service.

Plaintiffs–Below/Appellees Carl and Pamela Morton ("the Mortons") filed a petition for guardianship of a minor child against Defendant–Below/Appellant Terry Hanson (the "Hansons").[1] Because the Hansons are indigent, the Family Court appointed an attorney to represent them. The attorney, sought to withdraw from representation, because neither he nor his employer carry professional malpractice insurance.

The Family Court seeks guidance on the potential malpractice liability for in-house counsel appointed by a court to represent indigent parties. The Family Court certified to this Court two questions of law as follows:

(1) Is an attorney serving as in house counsel in "corporate practice," who is appointed by the Family Court to represent an indigent parent in child dependency and neglect proceedings provided with qualified[2] immunity from malpractice liability in his or her role as a court-appointed counsel by the Delaware Tort Claims Act ("Tort Claims Act"), or any other similar protection against malpractice liability such as the office of the Child Advocate Statute ("OCA" Immunity Statute), Delaware's Good Samaritan Statute, or any other applicable law?

(2) Whether or not such court appointed counsel is covered by the Tort Claims Act or other applicable law, does lack of malpractice insurance by in-house counsel in "corporate practice" constitute "good cause" to withdraw from courtappointed representation under Delaware Rule of Professional Conduct 6.2?

We answer the first certified question in the AFFIRMATIVE. In-house counsel appointed by the Family Court have qualified immunity under the Delaware Tort Claims Act. We answer the second certified question in the NEGATIVE. A lack of malpractice insurance is not "good cause" for an attorney to withdraw from court-appointed representation.

### Facts and Procedural History

The material facts are not in dispute. The Mortons are the maternal aunt and uncle of a young child. The Mortons filed a Petition in the Family Court for Guardianship of the Child. Responding to the

---

**1.** With the exception of the *amici curiae,* the names in this case are pseudonyms assigned by this Court *sua sponte* pursuant to Del. Sup.Ct. R. 7(d).

**2.** The Family Court's certified question referred to "limited" immunity. We use the term "qualified" here to maintain uniformity with our prior decisions.

Petition were the Child's Mother and Father (the "Hansons"), who themselves request to be named the Child's guardians.

The Family Court, finding the Hansons to be indigent, appointed Attorney X to represent them. Attorney X is employed as in-house counsel to a large Delaware corporation ("Corporation A"). To his credit, Attorney X has volunteered to perform *pro bono* work through Delaware Volunteer Legal Services ("DLVS") and the Office of the Child Advocate ("OCA"). The appointment in this case was not made through either organization.

In his position as in-house counsel, Attorney X's only client (apart from his volunteer work) is Corporation A. Very few of the matters in which Attorney X engages take place in Delaware courts. He is engaged in "corporate practice" and not the "private practice" of law as that term is used on the Delaware Supreme Court Registration Statement. Under this designation, Attorney X is not obligated to certify a statement of status of insurance coverage for legal malpractice liability. Neither Attorney X nor Corporation A maintains professional malpractice liability coverage for representation of non-Corporation A clients. Based on the absence of protection against exposure to a potential malpractice claim by Hanson, Attorney X moved to withdraw his representation on the ground that his appointment "poses an undue and unnecessary hardship." It is undisputed that Attorney X has a strong and laudable history of *pro bono* work before the Delaware courts, and sought to withdraw due solely to concerns about his professional malpractice insurance coverage.

The Family Court ordered briefing on Attorney X's motion to withdraw, and appointed *amicus curiae* to file a brief in opposition to Attorney X's argument. The Family Court then certified the two questions of law for this Court to consider, which we accepted. During the course of this proceeding we permitted corporate employers E.I. du Pont de Nemours and Company ("DuPont") and W.L. Gore & Associates, Inc. ("Gore") to submit a brief as *amici curiae* in support of Attorney X's position.

### *Discussion*

#### *Certified Question One: Immunity Under the Tort Claims Act*

■ The first certified question asks whether immunity is granted by applicable law, is under any or all of three statutes: the Office of Child Advocate ("OCA" Immunity Statute), the Good Samaritan Statute, or the Tort Claims Act. The OCA Immunity Statute only applies to attorneys and any other persons "employed by or contracted by or volunteering for the Office of the Child Advocate."[3] It is not disputed that Attorney X was appointed by the Family Court to represent Hanson. Nothing in the record suggests that this representation is in any way connected with the OCA or connected to Attorney X's past volunteer work for the OCA. The OCA Immunity Statute is inapplicable here.

■ Delaware's Good Samaritan Statute only provides immunity in seven narrowly enumerated emergency scenarios, none of which are implicated by the issues presented in this case.[4] The Good Samaritan Statute is also inapplicable.

---

3. 29 *Del. C.* § 9008A.

4. *See* 16 *Del. C.* § 6801(a) ("Notwithstanding any inconsistent provisions of any public or private and special law, any person who vol-

untarily, without the expectation of monetary or other compensation from the person aided or treated, renders first aid, emergency treatment or rescue assistance to a person who is

■ We find, however, that the Delaware's Tort Claims Act applies. One of the purposes of the Tort Claims Act is to "discourage law suits which might create a chilling effect in the ability of public officials or employees to exercise their discretionary authority."[5] The Tort Claims Act provides in pertinent part:

> [N]o claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or *any public officer or employee* . . . whether elected *or appointed* . . . where the following elements are present: (1) The act or omission complained of arose out of and in connection with the performance of an official duty . . . (2) The act of omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and (3) The act or omission complained of was done without gross or wanton negligence.[6]

The Tort Claims Act defines "employee" as used in the statute as:

> [A] person acting on behalf of a government entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state, or federal funds, including elected or appointed officials, volunteer firefighters and rescue squad members where the rescue squad receives full or partial financial support from political subdivisions or from the State, but the term "employee" shall not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the government entity.[7]

Although the language of the Tort Claims Act makes no explicit reference to public defenders, we held in *Vick v. Haller* that "the qualified immunity set forth in § 4001 applies to public defenders."[8] In so concluding this Court agreed with the trial court that public defenders were covered by the Tort Claims Act because they could be classified as "public employees [of the State] engaged in duties involving the exercise of discretion."[9] We rejected the argument that public defenders were entitled to absolute immunity rather than the qualified immunity that the Tort Claims Act provides under § 4001.[10] We held that despite "well-founded" public policy concerns that support granting public defenders absolute immunity, "it is for the General Assembly to determine whether the scope of § 4001 should be expanded."[11]

This Court again discussed the meaning of "employee" under the Tort Claims Act in *Browne v. Robb.*[12] The lawyer in *Browne*

---

unconscious, ill, injured or in need of rescue assistance, or any person in obvious physical distress or discomfort shall not be liable for damages for injuries alleged to have been sustained by such person or for damages for the death of such person alleged to have occurred by reason of an act or omission in the rendering of such first aid, emergency treatment or rescue assistance, unless it is established that such injuries or such death were caused willfully, wantonly or recklessly or by gross negligence on the part of such person.")

**5.** *Doe v. Cates*, 499 A.2d 1175, 1181 (Del. 1985).

**6.** 10 *Del. C.* § 4001 (emphasis added).

**7.** 10 *Del. C.* § 4010(1).

**8.** *Vick v. Haller*, 522 A.2d 865, 1987 WL 36716, at *3 (Del. Mar. 2, 1987).

**9.** *Id.*

**10.** *Id.*

**11.** *Id.*

**12.** *Browne v. Robb*, 583 A.2d 949 (Del.1990).

was appointed pursuant to Title 29, Section 4605 of the Delaware Code, which provides for the appointment of lawyers to indigent criminal defendants. That statute also entitles the lawyer to "reasonable compensation and reimbursement" for costs and expenses, as fixed in a contract between the lawyer and the court.[13] We found that appointed attorneys "serve in the same capacity as public defenders, replacing the latter when they are unavailable."[14] They cannot pick and choose their clients, and neither may court appointed counsel. Further, including appointed attorneys within the immunity protection of the Tort Claims Act served the statute's purpose of avoiding the "potential chilling effect" created by the threat of malpractice liability.[15] We noted several public policy reasons favoring immunity for court appointed defense counsel: the need for counsel to fearlessly and independently litigate claims; the duty to take on any client; the public interest in avoiding duplicitous litigation; and "the special relationship that exists between an indigent client and his appointed counsel."[16] In concluding that the Tort Claims Act protected court appointed counsel, we stated:

> [T]he special attorney-client relationship that exists between court appointed counsel and indigent persons accused of a crime mandates that the former be entitled to qualified immunity from certain civil suits under the State Tort Claims Act. These contract lawyers do not have the ability, which they ordinarily would possess in the marketplace, to reject such clients or cases .... a failure to recognize the statutory and common law principles of qualified immunity

would unnecessarily "chill" the private contract attorney system that 29 *Del. C.* § 4605 mandates.[17]

There is no language in *Browne* indicating that the Tort Claims Act or the holding in that case is limited to criminal appointments made pursuant to 29 *Del. C.* § 4605. The public policy considerations recognized in *Browne* apply to attorneys appointed to represent indigent parents in Family Court proceedings. Like the court appointed attorneys in *Browne*, attorneys appointed to represent indigent parents have the same special relationship with their clients as do attorneys representing indigent criminal defendants. Also, like attorneys appointed to indigent criminal defendants, Family Court appointees do not have the ability to reject such clients or cases. Finally, attorneys appointed by the Family Court promote the public welfare by independently litigating claims of clients who might otherwise be left without representation.

We accordingly find that the first certified question should be answered in the affirmative: the Tort Claims Act extends qualified immunity to attorneys appointed by the Family Court to represent an indigent parent in a child dependency and neglect proceeding.

### Certified Question Two: 'Good Cause' for Withdraw

■ Delaware Rule of Professional Conduct 6.2 provides that a court-appointed attorney may only withdraw from the appointment for "good cause."[18] Good cause includes when the representation will result in "an unreasonable financial burden

13. *Id.* at 950; 29 *Del. C.* § 4605.

14. *Id.*

15. *Id.* at 952 (*citing Cates,* 499 A.2d at 1181).

16. *Id.* at 951–52 (citations omitted).

17. *Browne,* 583 A.2d at 952.

18. Del. R. Prof. Conduct 6.2.

on the lawyer."[19] Additionally, DRPC 1.16(b)(6)-(7) allows an attorney to withdraw his or her representation if it will result in an unreasonable financial burden or when other good cause to withdraw exists.[20]

Delaware Supreme Court Rule 52 states the requirements for admission to the Delaware Bar, including sitting for the Bar Examination.[21] Delaware Supreme Court Rule 55.1 allows attorneys admitted in other jurisdictions to practice as inhouse corporate counsel in Delaware, with the caveat that such attorneys cannot appear in court.[22] Non–Delaware attorneys permitted to practice pursuant to Rule 55.1 may engage in *pro bono* work in Delaware, so long as the *pro bono* work is under the auspices of a Delaware organization or is supervised by a Delaware attorney.[23]

The parties contend that if there is no immunity to protect in-house counsel appointed by the Family Court to represent indigent parents, there is good cause to withdraw under DRPC 6.2(b). The Corporate *amici* also contend that there is good cause for in-house counsel appointed by the Family Court to withdraw under DRPC 6.2(b), and further contend that DRPC 1.16(b)(6) and 1.16(b)(7) allow withdrawal as well. The Corporate *amici* explain that corporate in-house counsel, such as Attorney X, represent only the corporate client, and are not required to procure malpractice liability insurance.

Given the qualified immunity provided to court appointed counsel by 10 *Del. C.* § 4001, we are not persuaded that good cause exists for a court appointed attorney to withdraw from representation for lack of malpractice insurance. No requirement to obtain insurance coverage is imposed by the court appointment. A malpractice claim will be subject to dismissal based upon the qualified immunity under the Tort Claims Act. We are not persuaded that the financial burden of moving to dismiss would be any more than *de minimis*. An unreasonable financial burden upon Attorney X has therefore not been shown.

### Conclusion

We thank the attorneys in this case for their assistance to the Court in briefing and arguing the important issues raised by the two certified questions before us. We answer the first certified question in the **AFFIRMATIVE**, holding that in-house counsel appointed by the Family Court are provided with qualified immunity under the Tort Claims Act. We answer the second certified question in the **NEGATIVE**, holding that a lack of malpractice insurance is not "good cause" to withdraw from court-appointed representation.

---

**19.** Del. R. Prof. Conduct 6.2(b).

**20.** Del. R. Prof. Conduct 1.16(b)(6)-(7).

**21.** *See generally* Del.Supr. Ct. R. 52.

**22.** Del.Supr. Ct. R. 55.1(a). The only appearances such counsel can make are *pro hac vice* or pursuant to Delaware Supreme Court Rule 57 for appearances before the justice of the peace. *Id.*

**23.** Del.Supr. Ct. R. 55.1(g).