

# SUPREME COURT OF MISSOURI
# en banc

DWIGHT LAUGHLIN, )   *Opinion issued June 30, 2020*
                                          )
                   Respondent,            )
                                          )
v.                                        )   No. SC98012
                                          )
DEWAYNE PERRY AND                         )
ELLEN FLOTTMAN,                           )
                                          )
                   Appellants.            )

## APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY
The Honorable James V. Nichols, Judge

Public defenders Dewayne Perry (hereinafter, "Perry") and Ellen Flottman (hereinafter "Flottman") appeal the circuit court's judgment affirming a jury's verdict in favor of Dwight Laughlin (hereinafter, "Laughlin") on his legal malpractice claim. Perry and Flottman argue the circuit court erred in overruling their motion for judgment notwithstanding the verdict ("JNOV") because they had official immunity from being sued for legal malpractice and because Laughlin failed to make a submissible case. This Court holds public defenders are entitled to official immunity from suit. Because this point is

dispositive, this Court does not reach Perry and Flottman's other claim of error. The circuit court's judgment is reversed, and the case is remanded.[1]

**Factual and Procedural History[2]**

In 1933, the United States acquired land in Neosho, Missouri, on which to build a United States post office, and the State of Missouri ceded jurisdiction over the land to the federal government.[3] The United States Constitution provides, if a state cedes jurisdiction over federal property within the state, the United States has exclusive jurisdiction to hear cases involving offenses committed on that federal property, depriving that state's courts of the authority to enforce state law on federal property. U.S. Const. art. I, sec. 8, cl. 17.

In 1993, Laughlin burglarized the Neosho post office and caused property damage. The federal government declined to prosecute Laughlin, but state charges were filed. Perry and another public defender, Mark White (hereinafter, "White"), were assigned to represent Laughlin at his trial. Neither public defender challenged jurisdiction although Laughlin thought the state "did not have the right to prosecute" him. Perry spoke with the prosecuting attorney about the issue. Perry, White, and the prosecuting attorney all believed concurrent jurisdiction to prosecute Laughlin existed, and none of them could recall an instance in which the federal government had exclusive jurisdiction in a similar criminal case. After a jury trial, Laughlin was found guilty and sentenced to thirty years'

---

[1] This Court has jurisdiction. Mo. Const. art. V, sec. 10.

[2] This recitation incorporates portions of *State ex rel. Laughlin v. Bowersox*, 318 S.W.3d 695 (Mo. banc 2010), and *State v. Laughlin*, 900 S.W.2d 662 (Mo. App. S.D. 1995), without further attribution or citation.

[3] Section 12.010. All statutory references are to RSMo 2000 unless otherwise indicated.

imprisonment on the burglary count and ten years' imprisonment on the property damage count, to be served consecutively.

Laughlin appealed. While his direct appeal was pending, Laughlin's appointed appellate public defender, James Martin (hereinafter, "Martin"), filed a Rule 29.15 post-conviction motion, alleging "the trial court did not have jurisdiction to try [his] case since it was a federal offense thereby preempting state court jurisdiction." The motion court denied his claim because "[n]o evidence was adduced showing the offense was not a state offense or that the federal government had pre-empted jurisdiction."

The court of appeals consolidated Laughlin's direct appeal and his post-conviction appeal. Flottman represented Laughlin in this proceeding. Laughlin sent Flottman a letter stating, "My charges were originally federal because the building was a post office" and cited cases he alleged demonstrated "due process flaws." However, Flottman could not glean that Laughlin was conveying his desire to assert a jurisdictional challenge. She believed there was concurrent jurisdiction and did not believe jurisdiction was a "good issue." Neither appeal challenged the circuit court's jurisdiction to try his case. Both judgments were affirmed. *State v. Laughlin*, 900 S.W.2d 662 (Mo. App. S.D. 1995).

While incarcerated and after the appeals were final, Laughlin discovered the deed to the post office and the federal and state provisions conferring exclusive federal jurisdiction in his criminal case. Laughlin began filing *pro se* motions to secure his release that were denied routinely until 2009. In November 2009, Laughlin petitioned for a writ of habeas corpus to determine whether his criminal convictions were void because the circuit court lacked jurisdiction over the subject matter. The state argued whether

3

jurisdiction was proper was litigated years ago, Laughlin was bound by the circuit court's judgment, and relief was barred due to his failure to raise the matter on appeal. After the circuit court and court of appeals denied Laughlin relief, this Court issued a writ of habeas corpus, holding Missouri did not have jurisdiction over offenses occurring in the Neosho post office; therefore, the circuit court lacked jurisdiction to prosecute Laughlin for burglary or property damage. *State ex rel. Laughlin v. Bowersox*, 318 S.W.3d 695, 703 (Mo. banc 2010). Laughlin was discharged from custody.

In August 2011, Laughlin sued Perry, White, Martin, and Flottman, alleging legal malpractice and breach of fiduciary obligation for their failure to assert the jurisdictional challenge during their representation of him at trial, on appeal, and in his post-conviction proceedings.[4] All defendants raised official immunity as an affirmative defense, contending official immunity applied to them because they were being sued for the performance of their official duties as state agents, officers, or employees while performing functions requiring a broad degree of discretion.

Laughlin submitted the legal malpractice claims at trial. Laughlin presented testimony from an expert who opined the defendants breached the standard of care by failing to pursue the jurisdictional challenge, which the expert characterized as "obvious." The jury returned its verdict in Laughlin's favor against Perry and Flottman and in Martin's favor against Laughlin. Perry and Flottman filed a JNOV motion alleging they were

---

[4] Laughlin also sued another attorney who represented him in an appeal before the United States Court of Appeals for the Eighth Circuit in 1997. Laughlin voluntarily dismissed that attorney and White prior to trial.

4

shielded from liability due to official immunity. The circuit court overruled their motion, and they now appeal.

## Standard of Review

"The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict." *Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 778 (Mo. banc 2015) (quoting *All Am. Painting, LLC v. Fin. Sols. & Assocs., Inc.*, 315 S.W.3d 719, 723 (Mo. banc 2010)). When reviewing the overruling of a JNOV motion, "[t]his Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Barron v. Abbott Labs., Inc.*, 529 S.W.3d 795, 799 (Mo. banc 2017) (quoting *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010)). This Court reviews the evidence in the light most favorable to the jury's verdict. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 12 (Mo. banc 2012).

## Official Immunity

Perry and Flottman argue the circuit court erred in overruling their motion for JNOV because they have official immunity from Laughlin's legal malpractice claim. Perry and Flottman maintain that, as public defenders, they are public employees employed by the state of Missouri and were acting within the scope of their authority as public defenders when choosing which strategies and defenses to pursue in Laughlin's case. Perry and Flottman contend foregoing the jurisdictional challenge was a discretionary decision entitling them to official immunity.

This Court thoroughly explained the official immunity doctrine in *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187 (Mo. banc 2019). *Alsup* noted this Court has long held official immunity "protects a public official from liability if that official acts within the course of his [or her] official duties and without malice." *Id.* at 190; *see also Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008) (stating official immunity protected "public employees" in the same manner). "Courts and legal commentators have long agreed that society's compelling interest in vigorous and effective administration of public affairs requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business." *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985). "Courts applying the doctrine of official immunity must be cautious not to construe it 'too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation.'" *Alsup*, 588 S.W.3d at 191 (quoting *Kanagawa*, 685 S.W.2d at 836).

*Public Defenders Are Public Employees*

The question of whether official immunity applies to public defenders is an issue of first impression for this Court.[5] A public defender's duty to represent indigent individuals

---

[5] Although three appellate decisions have broached the topic, none of them resolved the issue. *See Johnson v. Schmidt*, 719 S.W.2d 825, 826 (Mo. App. W.D. 1986) (finding the client's malpractice claim was premature and did not reach or rule on whether a public defender was protected by official immunity); *Costa v. Allen*, No. WD67378, 2008 WL 34735, at *5 (Mo. App. W.D. Jan. 2, 2008) (finding official immunity did not apply to public defenders, but after this Court accepted transfer of the case, this holding no longer held any precedential value); *Kuehn v. Hogan*, 321 S.W.3d 337, 344 (Mo. App. W.D. 2010)

6

is mandated by both the United States and Missouri constitutions, caselaw, and prescribed by Missouri statute. The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." "Because this right is 'fundamental and essential to a fair trial,' the constitutional guarantee of counsel is 'protected against state invasion by the Due Process Clause of the Fourteenth Amendment.'" *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 605 (Mo. banc 2012) (quoting *Gideon v. Wainwright*, 372 U.S. 335, 341, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963)). The Missouri Constitution provides, "in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel." Mo. Const. art. I, sec. 18(a).

"To fulfill *Gideon*'s promise that 'every defendant stands equal before the law,' the Missouri General Assembly has enacted an elaborate public defender system to provide legal services to indigent defendants." *Mo. Pub. Def. Comm'n*, 370 S.W.3d at 606 (internal citations omitted). Section 600.019.1 provides that the Office of State Public Defender (hereinafter, "OSPD") is "an independent department of the judicial branch of state government." *See also State ex rel. Francis v. McElwain*, 140 S.W.3d 36, 38 (Mo. banc 2004). The OSPD's "complete budget" must be provided for "through an annual appropriation subject to approval by the governor and the general assembly." Section 600.040.2, RSMo Supp. 2013. The OSPD is headed by the Public Defender Commission, comprised of members "appointed by the governor with the advice and

(Ellis, J., concurring) (positing public defenders should be shielded from liability by official immunity).

7

consent of the senate." Section 600.015.1. The Public Defender Commission determines compensation for public defenders. Section 600.021.3. Public defenders are prohibited from limiting the availability of their services "based on a determination that the office has exceeded a caseload standard" and "may not refuse to provide representation required under [chapter 600] without prior approval from a court of competent jurisdiction." Section 600.062, RSMo Supp. 2013.

When construing the Missouri rules of professional conduct concerning conflicts of interest requiring disqualification, this Court characterized a public defender as a "public officer or employee" and a "governmental attorney." *State v. Lemasters*, 456 S.W.3d 416, 420 (Mo. banc 2015). Moreover, section 600.040.3, RSMo Supp. 2013, provides, "Any person who is a public defender or employee of a public defender shall be entitled to all benefits of the Missouri state employees' retirement system" as defined by statute.

There is no dispute state employee public defenders Perry and Flottman were acting pursuant to their constitutionally and statutorily mandated duties by representing Laughlin during his trial, appeal, and post-conviction proceedings. Laughlin did not allege or prove Perry or Flottman acted with malice toward him during the representation.

While Laughlin concedes public defenders are state employees for purposes of coverage under the State Legal Expense Fund (hereinafter, "SLEF") as discussed below, Laughlin argues public defenders are not "public officers" entitled to official immunity based on the holding in *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761 (Mo. App. E.D. 1981). In *Eli Lilly*, the Eastern District declined to extend official immunity to a physician employed by a state mental health hospital who was sued for medical

8

malpractice. *Id.* at 766. The court determined that, even if the physician were a state employee compensated by the state, "the performance of [his] duties does not require the exercise of 'discretion' in the legal sense of that term" because "[s]hielding officials for decisions other than those made in the exercise of the sovereign's power which go to the essence of governing, extends the doctrine of official immunity beyond its original intent to promote smooth and effective government." *Id.* at 764-65. Hence, the court concluded only the discretionary decisions "which are a manifest exercise of the sovereign's power [are] those decisions which 'go to the essence of governing.'" *Id.* at 765 (quoting *Jones v. State Highway Comm'n*, 557 S.W.2d 225, 230 (Mo. banc 1977)).

Laughlin argues *Eli Lilly* remains valid law because it was not analyzed or overruled in *Southers* when this Court explained the official immunity doctrine. Laughlin argues *Southers* stated the goal of official immunity is "to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." *Southers*, 263 S.W.3d at 611. While *Southers* did not overrule *Eli Lilly*, this Court did not restrict official immunity only to those public officials' actions that "go to the essence of governing." *Id.* at 610-11. When carefully examining *Jones*, which was the quoted source of the "essence of governing" language relied on in *Eli Lilly*, it is clear *Jones* was discussing sovereign immunity, not official immunity. Further, this Court has not adopted *Eli Lilly*'s interpretation of official immunity in any case. Notably, this Court did not make such a distinction in *Alsup* when extending official immunity to a teacher after his implementation of restrictive behavioral intervention techniques resulting in a student being injured. It is evident the teacher was not a "public official" engaged in the "essence

9

of governing" when interacting with the student. *Alsup*, 588 S.W.3d at 193. Hence, Laughlin's reliance on the "essence of governing" language from *Eli Lilly* to restrict official immunity to public officials and not public employees is misplaced and has no applicability here.

*Public Defenders' Duties Constitute Discretionary Acts*

Perry and Flottman are not entitled to official immunity merely because they are state or public employees conducting official duties. Official immunity only "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers*, 263 S.W.3d at 610; *Alsup*, 588 S.W.3d at 190. The official immunity doctrine does not protect public employees for alleged acts of negligence for the performance of ministerial duties. *Southers*, 263 S.W.3d at 610. Hence, this Court must determine whether Perry and Flottman's decisions to forego challenging state jurisdiction were discretionary or ministerial acts.

"Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." *Id*. "A discretionary act requires the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id*. By contrast, *Alsup* defined a ministerial act as follows:

> Generally, a ministerial act has long been defined as merely clerical. And this Court has noted that a ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. For more than a century, this Court has held that a ministerial or clerical duty is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to … judgment or opinion concerning the propriety or

10

impropriety of the act to be performed. Thus, the central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task–by definition–is not ministerial.

*Alsup*, 588 S.W.3d at 191 (internal citations and quotations omitted).

Perry and Flottman contend practically any decision or action taken by an attorney in representing his or her client is discretionary in nature, including which defenses to assert at trial and which legal arguments to present on appeal. Laughlin, however, characterizes the jurisdictional challenge as a ministerial task because, once he advised Perry and Flottman of his desire to challenge the circuit court's jurisdiction, they had no discretion to refuse to explore that defense. Laughlin discounts Perry's testimony acknowledging there was a jurisdictional issue in this case and he discussed the issue with the prosecuting attorney and White, who all reached the same conclusion that concurrent jurisdiction existed. Laughlin also discounts Flottman's testimony that, in her opinion, the jurisdictional challenge was not a "good issue" to raise on appeal.

"As a practical matter, virtually any decision or action taken by an attorney during trial involves the exercise of professional judgment and is clearly discretionary in nature." *Kuehne*, 321 S.W.3d at 347 n.8 (Ellis, J., concurring). It is undisputed attorneys exercise discretion and judgment in formulating which strategies and defenses to present on their clients' behalf. *State v. Basile*, 942 S.W.2d 342, 355 (Mo. banc 1997) (holding "[d]efense lawyers are given a broad range of leeway in determining what strategy to follow"); *Hawkins v. State*, 512 S.W.3d 112, 116 (Mo. App. E.D. 2017) (holding "[c]ounsel is allowed wide latitude in conducting a defense and may use his [or her] best judgment"). Further, "appellate counsel does not have a duty to raise every appealable issue; counsel

11

may strategically decide to forgo certain arguments in favor of others." *Meiners v. State*, 540 S.W.3d 832, 838 (Mo. banc 2018). Hence, a public defender's decision concerning which defenses to raise or which issues to present on appeal "requires the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." *Southers*, 263 S.W.3d at 610. These decisions are not clerical in nature with no regard to the public defender's judgment or opinion concerning the propriety of raising the defenses or issues on appeal. Perry and Flottman had no clear and unequivocal duty to assert the jurisdictional challenge. These decisions, therefore, are not ministerial. *Alsup*, 588 S.W.3d at 191.

Laughlin claims Perry's and Flottman's assumptions concurrent jurisdiction existed without further researching the issue was negligent because any competent attorney would have done so, especially after he brought this claim to their attention. This argument conflates whether Perry's and Flottman's actions were discretionary in nature for official immunity purposes with whether they violated the standard of care in performing those discretionary acts to be found negligent. Whether a party is immune from suit precedes whether a party has violated the standard of care. Nevertheless, Laughlin equates researching the jurisdictional issue with a doctor's function when he or she is diagnosing a medical condition and determining a treatment plan, which he argues could be considered ministerial acts. To support this argument, Laughlin relies on a concurring opinion in *Canon v. Thumudo*, 422 N.W.2d 688, 705 (Mich. 1988), which relied on *Eli Lilly*, and opined:

> A government doctor should not be deemed immune from tort liability merely because he is employed by the government. His actions and decisions should be deemed immune only when he is acting as a uniquely *governmental* doctor, such as when he is determining the scope of the government's involvement with a particular patient. While decisions to admit or release patients from government facilities may thus be deserving of immunity, routine medical decisions—diagnoses, prescriptions, and structuring of treatment plans—should not be so shielded by this Court in the declaration of the common law of this state from accountability for malpractice.

he majority in *Canon* stated otherwise: "To adopt such a definition for 'ministerial' would come close to eliminating all immunity for professionals by confusing the issues of immunity and negligence. The distinction is significant. If every act which deviates from a professional norm were to be categorized as 'ministerial,' immunity would seldom shield professional discretion." *Id*. at 691. Hence, this case does not aid Laughlin or persuade this Court to find Perry's and Flottman's decisions concerning whether to raise the jurisdictional challenge were ministerial. Public defenders are the epitome of "individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business." *Kanagawa*, 685 S.W.2d at 836. Choosing which defenses to raise and arguments to pursue on appeal on behalf of indigent clients constitute discretionary acts entitled to official immunity.

*Other Jurisdictions Support Public Defender Immunity*

While the application of Missouri's official immunity jurisprudence affords Perry and Flottman protection, this Court's decision also is in line with decisions from other jurisdictions. Initially, this Court recognizes the United States Supreme Court has held federal public defenders are not entitled to absolute immunity under federal law for state

13

malpractice actions. *Ferri v. Ackerman*, 444 U.S. 193, 205, 100 S. Ct. 402, 410, 62 L.Ed.2d 355 (1979). *Ferri* did not extend this holding to the states, however, explaining:

> We are not concerned with the elements of a state cause of action for malpractice and need not speculate about whether a state court would consider [a] petitioner's allegations sufficient to establish a breach of duty or a right to recover damages. Nor are we concerned with the question whether [a state] may conclude as a matter of state law that [a] respondent is absolutely immune. For when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law.

*Id*. at 197-98 (footnotes omitted). In *Tower v. Glover*, 467 U.S. 914, 923, 104 S. Ct. 2820, 2826, 81 L.Ed.2d 758 (1984), the United States Supreme Court held state public defenders are not immune from federal suit brought pursuant to section 42 U.S.C. § 1983 for intentional misconduct. Yet *Tower* recognized:

> Immunities in this country have regularly been borrowed from the English precedents, and the public defender has a reasonably close 'cousin' in the English barrister. Like public defenders, barristers are not free to pick and choose their clients. They are thought to have no formal contractual relationship with their clients, and they are incapable of suing their clients for a fee.

*Id*. at 921. Hence, while no jurisdiction—including Missouri—extends immunity to public defenders for intentional misconduct, several jurisdictions have extended immunity in some manner to public defenders for alleged negligent acts, whether through judicial immunity, official immunity, statutory immunity or some other variation thereof.

The seminal case extending judicial immunity to public defenders is *Dziubak v. Mott*, 503 N.W.2d 771 (Minn. 1993). The Minnesota Supreme Court relied on several public policy reasons to support its decision:

14

Immunity from suit for public defenders best serves the indigent population in preserving the resources of the defender's office for the defense of the criminally accused. Immunity also aids in the recruitment of qualified attorneys to represent indigent clients in criminal proceedings. Immunity preserves the criminal justice system which relies upon the judge, prosecutor and public defender as essential participants. This serves the best interests of indigent defendants and of society as a whole ....

Since justice demands that a defense be provided to criminal defendants who are not able to afford privately retained counsel, it is essential that a sufficient number of qualified attorneys be willing and able to provide this defense. Immunity will aid in the continued recruitment of attorneys to perform this service in our criminal justice system; such service is eagerly sought by most attorneys. The accused defendant is not the sole beneficiary. Society as a whole depends on the role of defense counsel to secure an ordered system of liberty and justice, as ordained by our Constitution.

The extension of immunity to public defenders will ensure that the resources available to the public defender will be used for the defense of the accused, rather than diminished through the defense of public defenders against civil suits for malpractice. Immunity will conserve these resources to provide an effective defense to the greatest number of indigent defendants.

*Id.* at 777-78; *see also Scott v. City of Niagara Falls*, 407 N.Y.S.2d 103, 106 (N.Y. Sup. Ct. 1978) (granting public defenders judicial immunity but not extending immunity to negligent performance of ministerial tasks requiring no judgment or discretion).[6]

Kentucky extended qualified immunity to public defenders, engaging in a very similar analysis as this Court concerning public defenders engaging in discretionary functions. *See Jacobi v. Holbert*, 553 S.W.3d 246, 256 (Ky. 2018) (holding public

---

[6] Two states declined to extend judicial immunity to public defenders. *See Schreiber v. Rowe*, 814 So.2d 396, 398-99 (Fla. 2002) (rejecting extension of judicial immunity to public defenders but noting the legislature extended the waiver of sovereign immunity to public defenders, which exempted them from personal liability); *Shubert v. Ada Cty.*, 461 P.3d 740, 749 (Idaho 2020) (declining to extend common law quasi-judicial immunity to public defenders because they do not act as an arm of the court).

defenders have qualified immunity when acting in good faith and within the scope of their employment). Pennsylvania, however, rejected qualified immunity. *Reese v. Danforth*, 406 A.2d 735, 737 (Pa. 1979). *Reese* is distinguishable from Missouri's approach because *Reese* holds qualified immunity applies only to policymaking officials and does not extend to mere public employees. *Id*.

Several states have extended immunity to public defenders through statutory enactment. In some instances, jurisdictions enacted statutes expressly protecting public defenders or include public defenders explicitly within the definition of state or public employee. *See Gross v. Rell*, 40 A.3d 240, 251 n.7 (Conn. 2012) (noting public defenders were added to the definition of state officers and employees entitled to qualified statutory sovereign immunity under Connecticut General Statute § 4-141(5)(B)); *Johnson v. Halloran*, 742 N.E.2d 741, 744 (Ill. 2000) (recognizing public defenders do not have sovereign immunity but enjoy qualified immunity under chapter 745 ILCS 19/1, Illinois' public and appellate defender immunity act, except for willful and wanton misconduct); *Wright v. Elston*, 701 N.E.2d 1227, 1233 (Ind. Ct. App. 1998) (holding public defenders were entitled to statutory immunity pursuant to the Indiana Tort Claim Act, Indiana Code § 34-6-2-38(b), defining them as state and public employees); *Ramirez v. Harris*, 773 P.2d 343, 344-45 (holding Nev. Rev. Stat. § 41.0307.4(b) defined public defenders as public officers and precluded them from being sued for malpractice); Tenn. Code Ann. § 8-14-109 (providing absolute immunity for "any act of negligence arising from the execution of the [public defender's] official duties as an employee of the district public defenders …."); Tenn. Code Ann. § 8-14-108 (defining public defenders as state employees); and *Mooney*

16

*v. Frazier*, 693 S.E.2d 333, 337 (W. Va. 2010) (citing Public Defender Services Act, W. Va. Code § 29-21-20, providing court-appointed counsel immunity from legal malpractice claims).

In other instances, courts construed statutory language defining public employees to include public defenders. *See Wallin v. McCabe*, 293 P.3d 81, 83 (Colo. App. 2011) (characterizing public defenders as public employees who have immunity derived from Colorado statute); *Vick v. Haller*, 512 A.2d 249, 252 (Del. Super. Ct. 1986) (holding public defenders have qualified immunity under Delaware's state tort claims act and reaffirmed by *Browne v. Robb*, 583 A.2d 949, 951 (Del. 1990), and *Hanson v. Morton*, 67 A.3d 437, 441 (Del. 2013)); *Nieves v. Office of the Pub. Def.*, No. 082262, 2020 WL 1870253, at *7-8 (N.J. Apr. 15, 2020) (holding legal malpractice claims against public defenders are subject to the New Jersey Torts Claim Act, N.J. Stat. § 59:2-1(a)—which places conditions and limits on the ability to recover damages—because the office of the public defender is a public entity and its public defenders are public employees); *Coyazo v. State*, 897 P.2d 234, 238 (N.M. Ct. App. 1995) (finding public defenders are public employees for purposes of the New Mexico Tort Claims Act, N.M. Stat. § 41-4-3F, and have immunity from legal malpractice claims); *Wooten v. Vogele*, 769 N.E.2d 889, 893-94 (Ohio 2001) (defining public defenders as employees of a political subdivision who perform a governmental function under Ohio Tort Liability Act, Ohio Rev. Code § 2744.03(A)(6), holding public employees liable only for conduct that is manifestly outside the scope of employment or for conduct that is malicious, reckless, or done in bad faith); *Bradshaw v. Joseph*, 666 A.2d

1175, 1176-77 (Vt. 1995) (determining public defenders are state employees under statute governing tort claims against the state and had immunity from being sued for negligence).[7]

*SLEF Coverage Does Not Preclude Official Immunity Application*

The final question this Court must address is whether SLEF coverage for public defenders is a valid basis to deny them official immunity. The General Assembly created the SLEF in 1983. *State ex rel. Hawley v. City of St. Louis*, 531 S.W.3d 602, 604 (Mo. App. E.D. 2017). The fundamental purpose of the SLEF is

> to protect the covered employees from the burden and expense of civil litigation relating to the performance of their duties. The purposes are apparent. A competent employee, who is in demand elsewhere, may be unwilling to work for the state without protection. Those who do serve may be unwilling to take necessary risks for fear of litigation.

*Cates v. Webster*, 727 S.W.2d 901, 907 (Mo. banc 1987) (Blackmar, J., concurring in part and dissenting in part). "[Section] 105.711 applies to lawsuits brought against any officer or employee 'arising out of and performed in connection with his or her official duties on

---

[7] Three states declined to extend statutory immunity to public defenders based on the nature of their duties. *See Barner v. Leeds*, 13 P.3d 704, 714 (Cal. 2000) (holding public defenders are not entitled to statutory immunity from malpractice claims because the nature of their representation did not involve policy decisions and discretionary acts as contemplated under California's immunity statute); *Shubert*, 461 P.3d at 750-51 (holding public defenders are not entitled to statutory immunity under the discretionary function exemption of the Idaho immunity statute); *Trobaugh v. Sondag*, 668 N.W.2d 577, 585 (Iowa 2003) (declining to extend statutory immunity to public defenders because a legal malpractice claim was not the functional equivalent of other causes of action specifically exempted under the Iowa Tort Claims Act, Iowa Code § 669.14). Further, Michigan declined to extend immunity for appointed criminal attorneys, finding no rationale to distinguish between appointed and private counsel. *Donigan v. Finn*, 290 N.W.2d 80, 82 (Mich. App. 1980).

behalf of the state, or any agency of the state' …." *Smith v. State*, 152 S.W.3d 275, 280 (Mo. banc 2005). This section further provides:

> The [SLEF] shall be the exclusive remedy and shall preclude any other civil actions or proceedings for money damages arising out of or relating to the same subject matter against the state officer or employee, or the officer's or employee's estate. No officer or employee of the state or any agency of the state shall be individually liable in his or her personal capacity for conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state or any agency of the state.

Section 105.711.5, RSMo Supp. 2014. This section reinforces the SLEF's purpose to protect state employees by limiting the circumstances in which they may be sued and held liable for conduct arising out of and in connection with their official duties.

The parties do not dispute Laughlin's damages award against Perry and Flottman would have been paid from the SLEF because they are state employees whose alleged malpractice arose out of their official duties on the state's behalf. *See Johnson*, 719 S.W.2d at 828 (stating payment of any award against a public defender for a client's successful malpractice claim would have been made from the SLEF). However, Perry and Flottman argue SLEF coverage does not preclude their assertion of official immunity pursuant to section 105.726.1. Laughlin disagrees, arguing the SLEF creates blanket immunity for all state employees, regardless of whether they are acting in a discretionary or ministerial capacity, but waives sovereign immunity for those actions by creating a legal defense fund that compensates individuals injured by state employees.

Section 105.726.1 provides in pertinent part, "Nothing in sections 105.711 to 105.726 shall be construed to broaden the liability of the State of Missouri … nor to abolish or waive any defense at law which might otherwise be available to any agency, officer, or

19

employee of the State of Missouri." Although a state employee may be afforded protection from personal liability for damages under the SLEF, section 105.726.1's plain language expressly provides this protection does not preclude a state employee from asserting any and all available defenses, including official immunity that could relieve a state employee of liability or prevent the suit from proceeding.

"'Immunity' connotes not only immunity from judgment but also immunity from suit." *Alsup*, 588 S.W.3d at 190 (quoting *State ex rel. Mo. Dep't of Agric. v. McHenry*, 687 S.W.2d 178, 181 (Mo. banc 1985)). Laughlin fails to cite any case holding SLEF coverage precludes a party from asserting official immunity as a defense to suit or any case in which exposure to personal liability was a factor in determining whether a party may assert official immunity. If this Court construed section 105.726.1 as Laughlin contends and declined to extend official immunity to public defenders *solely* because they have SLEF coverage, this would effectively end SLEF coverage for other state employees who are entitled to assert official immunity. Laughlin's assertions that SLEF coverage affords injured parties a means to recover monetary damages and that he will be left without a remedy if this Court applies official immunity to public defenders are also unpersuasive. Having no remedy or recourse occurs in *every* case in which official immunity applies and serves as no reason to carve out an exception for malpractice claims against public defenders solely on that basis.

To adopt Laughlin's argument is to fail to acknowledge protection from personal liability for a judgment differs significantly from a suit being initiated. Protection from personal liability still subjects a public defender to all of the burdens of litigation—from

20

discovery to trial—which can be complex, time-consuming, and serve as a distraction from an overwhelming caseload. Consequently, if these cases were permitted to go to trial, the benefits of immunity from suit would be lost even if, ultimately, the public defenders were not liable personally for any costs or judgments that resulted. Finally, this Court is mindful that the SLEF is a statutory creation, subject to appropriation by the legislature, which may choose to amend, defund, or eliminate this coverage at any time.

## Conclusion

Public defenders are entitled to official immunity because they are public employees whose official statutory duties concern the performance of discretionary acts. The circuit court's judgment is reversed, and the cause is remanded.

GEORGE W. DRAPER III, CHIEF JUSTICE

All concur.